THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH GORDON, Defendant.

Court of Special Sessions of City of New York, Borough of Brooklyn, County of Kings, June 26, 1939.

*William F. X. Geoghan, District Attorney [Louis J. Gribetz of counsel], for the plaintiff.*

*Telsey & Young [Samuel A. Telsey of counsel], for the defendant*

BAYES, C. J. The material allegations of the information herein follow: " The defendant, on or about May 19, 1938, in the County of Kings, with intent to defraud, sold and exposed for sale at premises number 546 East New York Avenue certain meat and meat preparations and falsely represented the same to be kosher, which meat and meat preparations was raw and prepared for human consumption, and as having been prepared under and of a product and products sanctioned by the Orthodox Hebrew religious requirements; whereas in truth and in fact the said meat and meat preparation was not kosher nor had the same been prepared under and of a product or products sanctioned by the Orthodox Hebrew religious requirements."

The information is based upon section 435-a of the Penal Law, reading: " A person, who, with intent to defraud sells or exposes for sale any meat or meat preparation and falsely represents the same to be kosher, whether such meat or meat preparation be raw or prepared for human consumption, or as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious requirements * * * is guilty of a misdemeanor."

The witnesses for the People testified to the sale by defendant on May 19, 1938, of a meat preparation, viz., a chicken; that the chicken at the time of the sale was represented to be kosher or as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious requirements.

An inspector from the Department of Agriculture and Markets testified to the purchase of the chicken from defendant and further that defendant represented to him that it was kosher. The defendant did not take the stand. The central point of controversy turns upon whether the representation was false and whether the sale was made with intent to defraud. False representation and fraudulent intent are necessary elements of the crime.

The People contend that false representation is established by the fact that the fowl sold by defendant did not have attached to it the seal of the Kashruth Association of Greater New York, Incorporated (a membership corporation, hereinafter referred to as the Kashruth Association), indicating that it was kosher, and further that defendant's establishment, a poultry slaughter house, was without rabbinical supervision under the auspices of said association. Defendant admits he did not use the seal or the rabbinical supervision of the Kashruth Association.

Stated in the light of the record as a whole, the question is, no matter what other seal or symbol or rabbinical supervision defendant employed, was it a violation of section 435-a of the Penal Law not to employ the seal or symbol and rabbinical supervision of the Kashruth Association? We hold that this question must be answered in the affirmative. The same answer was given in the case of *People* v. *Gelb* (unreported, decided by this court in Part II, Kings County, April 18, 1938).

The question raised in the present case is of tremendous importance to a considerable number of people in the city of New York. The sale of poultry alone, but one of many meat preparations, which is bought as kosher, runs into many millions of dollars per annum. The fact that kosher meat costs more to prepare, and sells at a higher price than non-kosher, indicates in part what lies at the bottom of the legislation enacted into section 435-a of the Penal Law. Moreover, if the legislative intent to protect those of our citizens whose religious tenets require that their food be kosher, is to be given effect, the statute should be construed in harmony with the object sought to be attained. What was intended by inserting into section 435-a of the Penal Law the words " sanctioned by the orthodox Hebrew religious requirements?" Who should determine what these religious requirements are? Who, indeed, except those attached to the orthodox Hebrew religion? And if so, need it be assumed that these requirements once stated are to be unchanging and unchangeable irrespective of changing circumstances? The Legislature has not undertaken to limit and define these requirements but has incorporated them into the statute by reference.

It is sufficient to say that these requirements are contained in the *issur* or decree adopted at a meeting of the Rabbinical Board of Greater New York on October 29, 1934, and promulgated on November fifth following. The language of the *issur* is as follows:

" With the help of God, Monday, the 27th day of the month of Mar Cheschvan, 5695 [November 5, 1934].

" Whereas, in the City of New York, there is, as is generally known, chaos in the matter of slaughtering of poultry for Jewish consumption, and

" Whereas, in many poultry slaughtering establishments and markets, there are manifold malpractices, in violation of the laws of the Torah, concerning ' nevelah ' and ' Trefah ' [two classes of non-kosher food], and especially since investigations recently conducted have made it abundantly clear that the structure of Kashruth regarding poultry has collapsed, as was demonstrated by the facts brought out in these many investigations, which show how far Kashruth in the slaughtering of poultry has been defective and imperfect, thus casting upon such slaughtered poultry the suspicion of their being forbidden under the Biblical dietary laws (a situation which we deeply deplore) and

" Whereas, as rabbis, official guardians of our holy religion and the correct observance of its precepts, the laws of our sacred Torah place upon us specifically the responsibility of taking the necessary measures to keep our people from the consumption of forbidden food (and if at this juncture we should remain silent and inactive, we would be guilty of a serious breach of religious duty);

" Therefore, in view of the situation here set forth and the duty devolving upon us, we have reached the following decisions:

" (1) That the slaughter houses and the Schochtim must be placed under permanent and effective supervision, as approved by, and under the auspices of, the rabbis of the City of Greater New York, who are united in the Kashruth Association.

" (2) That each bird slaughtered as kosher must be marked with a ' plumba ' or a similar sign, such mark to be affixed by a person authorized by the rabbinate, as an identifying token of Kashruth and evidence that the bird has been slaughtered as kosher in accordance with the traditional laws and regulations so that our co-religionists in New York City by purchasing only poultry which come from such slaughtering establishments as are under the proper supervision above described and which bear authorized tokens of Kashruth will be safeguarded from violation of the dietary laws.

" (3) And, therefore, in accordance with the authority specifically vested in us by the holy Torah, for safeguarding the observance of its dietary laws, we herewith do, with the full strength and severity of the law, solemnly declare, pronounce, issue and publish an issur [religious prohibition], to go into effect forthwith on poultry not slaughtered in accordance with the above regulations or not bearing an authorized token, as above described, declaring that such poultry is forbidden to be consumed by Jews.   Utensils in which

birds not killed in accordance with these regulations have been cooked may not be further used without previous inquiry of a rabbi, who shall determine whether they may be used again.

" (4) And every Schochet who, in contravention of these regulations, will slaughter birds without supervision or without a token of Kashruth being affixed, as described above (unless the slaughtering is done in each case by express permission of a qualified rabbi for the use of sick people), will lose his status of reliability in regard to Kashruth, and as a violator of the Jewish Law will henceforth become disqualified to act as Schochet.

" We cherish confidence that no rabbi or scholar versed in Jewish Law will attempt to diminish the force of this prohibition or rule to the contrary, and thus rebel against and separate himself from the entire body of the Orthodox Rabbinate of New York City in which case his ruling shall become null and void as are the rulings of one who is a destroyer of the fence of the law [non-conformist].

" May the Grace of the God Almighty rest upon us, and may peace and prosperity come to all our brethren in the House of Israel who conscientiously observe the laws of our holy faith. The blessings of the good God be ever upon them."

If we are correct in the views we entertain it follows that the *issur* above quoted has become incorporated by reference into the statute and is to be given effect as a valid and binding legislative enactment. Defendant challenges the constitutionality of the statute upon the ground that it is indefinite, vague and uncertain, that it denies to all citizens the equal protection of the laws, that it constitutes a delegation of legislative powers to a non-legislative body, and that the rules, regulations, decrees and prohibitions of the body to which legislative powers have been delegated are not subject to review by the courts except where property rights are involved.

The same question based upon alleged unconstitutionality was raised in the case of *People* v. *Gelb* (*supra*) and ruled upon adversely to the defendant. (See, also, *People* v. *Atlas*, 183 App. Div 595; affd., without opinion, 230 N. Y. 629, and *Hygrade Provision Co.* v. *Sherman*, 266 U. S. 497.) In view of these cases we do not deem it essential to indulge in detailed discussion of the above-mentioned objections raised by defendant.

Much light is thrown upon the entire subject, including the effect of acts of ecclesiastical tribunals, in the able and exhaustive opinion of Justice McCook in the case of *S. S. & B. Live Poultry Corp.* v. *Kashruth Assn. of Greater New York, Inc.* (158 Misc. 358), which was an action for rescission of contract and for an injunction

with incidental damages. After reciting the history of the enactment and promulgation of the *issur*, the court, in denying the relief sought (at p. 365), said: " One point remains for consideration: the claim of monopoly by the defendant. One who enters the field of the kosher trade assumes certain obligations, not usual in other lines; so much is admitted by the plaintiff, who concedes that supervision by rabbis is a prerequisite and is firmly established in New York law, having been enacted into our Penal Law (§§ 435, 435-a, 435-b). Kosher poultry costs more than non-kosher. It would be inequitable to permit its sale by any one as kosher unless in truth kosher. Whether it is so or not is a religious matter for the rabbis to determine. An overwhelming majority of them support the *issur*. The plaintiff cannot obtain the advantages of his business without assuming the disadvantages which necessarily accompany it. In the very nature of things, *kashruth* must be monopoly in the hands of those best qualified to administer it. By definition and tradition those persons are the rabbis and their decree is final. Such is the effect of the evidence in this case."

As to the falsity of the representation made by defendant attention is drawn to the fact that defendant refrained from using the seal or plumba of the Kashruth Association and did not have rabbinical supervision of the said association. In other words, defendant refused to recognize the *issur* as validly incorporated into and forming a part of the statute.

Upon the question of intent to defraud the evidence established that defendant had knowledge of the orthodox Hebrew requirements as contained in the *issur* and that for a time he used the plumbas or seals of the Kashruth Association. It further appears from the record that his refusal rested upon economic rather than religious grounds and that he would have made use of the seals or plumbas if it were not necessary to pay for them.

In arriving at a conclusion adverse to defendant, we are not unmindful that we are construing a criminal statute, and that guilt must be established beyond a reasonable doubt. There is no substantial controversy as to the facts and we hold that the law is a valid and constitutional enactment of the Legislature.

Accordingly, defendant's motions for a dismissal of the information and an acquittal are denied and defendant is adjudged guilty.

Present — BAYES, C. J., SALOMON and DOYLE, JJ; SALOMON, J., concurs with BAYES, C. J.

SALOMON, J. (concurring). I fully concur with the opinion of Mr. Justice BAYES. The statute under which this prosecution is

brought expressly provides that products sold as kosher must be prepared in accordance with the orthodox Hebrew regulations. It is not disputed that the *issur*, which is set forth in detail in the opinion of Mr. Justice BAYES, was duly promulgated in accordance with the orthodox Hebrew laws and traditions by a duly authorized religious body.

It is, however, contended by the defendant that the provisions in said *issur* making the affixing of a plumba or seal furnished by the Kashruth Association obligatory, which seal, however, is furnished and must be affixed by a duly authorized individual designated by this Kashruth Association for the purpose of vouchsafing that the poultry upon which the seal was affixed was prepared and slaughtered under proper supervision in accordance with the Hebrew traditions, is not enforcible, and that the refusal of the defendant to affix this seal does not constitute a violation of the statute.

The *issur* referred to herein is a solemn religious and holy document duly issued by the only religious body recognized and authorized to promulgate orthodox religious regulations, and the Kashruth Association is therein designated as the official arm or instrument to supervise and issue and cause to be affixed the seal or plumba certifying that the product upon which it is affixed is kosher and fit for consumption in accordance with the orthodox Hebrew traditions and laws. This provision does not change or create a new tradition. It simply provides for a definite regulation and supervision and specifically provides the instrument (Kashruth Association) to conduct the necessary supervision and to certify that such supervision was had by causing the plumba or seal to be affixed to the product to be sold.

The defendant objects to being obliged to pay one cent for said seal and frankly states through his counsel that if the seal did not have to be paid for he would comply with the provisions of the *issur*. It is to be remembered that in order to justify the affixing of this seal it is necessary for the instrument designated, namely, Kashruth Association, to provide the rabbis and mashgiachs and to provide for the proper supervision according to the orthodox Hebrew religion, of the poultry markets holding themselves out as dealers in kosher products, so as to make certain that those orthodox Hebrews who purchase same, relying upon the seal affixed, have the positive assurance that they are consuming strictly kosher food and are not being defrauded. The price of one cent a seal is a fair and reasonable charge to cover the expenditures for such supervision.

It is not contended that the duly authorized instrument, the Kashruth Association, is not acting in good faith or that it refused to supervise and supply the seals in the case at bar; to the contrary, it appears conclusively that the defendant willfully refuses to permit such supervision and the affixing of said seals. The defendant having elected to engage in the kosher poultry business and holding himself out as dealing in kosher products according to the orthodox Hebrew religion cannot be heard to complain or refuse to comply with holy edict duly issued by the only body of men authorized to promulgate same, namely, the Orthodox Rabbinate.

This religious regulation was not created for this defendant only. It was created for every individual engaged in holding himself out as dealing in kosher products, and the statute in question was placed upon our statute books expressly for the purpose that an individual engaging in the business of selling kosher meat products must comply with the Hebrew religious regulations and upon failure to do so he is guilty of a misdemeanor. The constitutionality of this statute is no longer a moot question. For the reasons above stated, I find the defendant guilty as charged in the information.