Edward J. Greenfield, J.
A seeming paradox is presented in this ease as to whether a person who has apparently complied *535 with the law may, nevertheless, be in violation of the law for not proclaiming that he has in fact complied.
Defendant was charged with violations of sections 201-a and 201-c of the Agriculture and Markets Law, in failing to label properly certain meat products sold as kosher. Upon failure at the trial to adduce any evidence that the meat sold as kosher was not prepared wholly in accordance with Hebrew orthodox religious requirements, the charges of fraudulent misrepresentation under section 201-a were dismissed.
A different question is presented, however, with respect to section 201-c. There appear to be no reported cases construing that section. That section not only prohibits mislabeling as “ kosher ” food which is not, but proscribes the removal, alteration or obliteration of kosher marks or labels, and in subdivision 3, also forbids the sale of kosher food which does not have affixed thereto “ the original slaughter-house plumba or any other mark, stamp, tag, brand, label or other means of identification employed to indicate that such food or food products are kosher or have been prepared in accordance with the Hebrew orthodox religious requirements ”. The obvious purpose of the section is to give assurance to the consumer that he can rely on the labels — that for once appearance and reality coincide.
The evidence in this case showed that in almost every instance testified to, the meat products sold by defendant, a processor and wholesaler, bore the slaughter-house plumba or tag with the words “ Kosher ” in Hebrew, but nothing else. The orthodox rabbis on both sides who appeared as witnesses in the case agreed that before the meat could be considered kosher, not only did the slaughtering have to conform to orthodox religious requirements, but thereafter the meat had to be drained, soaked, salted and be handled only by Sabbath observers. Hence, a certification that the slaughtering was kosher would tell only half the tale, and a consumer relying on the kosher tag of the slaughter house might be misled into believing that the necessary subsequent steps had been taken when they were not, or at the least, he would be in doubt. It was to remove such doubt and uncertainty that the statute was promulgated.
While the proof in the case indicates that the necessary steps after the ritual slaughtering were meticulously observed by the defendant to comply with the religious law, defendant was nevertheless required by secular law to affix its tags to the meat along with those of the slaughter house to attest to that fact, so that consumers could properly distinguish between those foods fully certified as kosher, and those in which there had been compliance only up to a point. Failure to attach its own *536 tags to certify that the processing as well as the slaughtering met with orthodox requirements constituted a violation of subdivision 3 of section 201-c of the Agriculture and Markets Law.
The case of People v. Gordon (258 App. Div. 421, affd. 283 N. Y. 705 [1940], revg. 172 Misc. 543) points up this conclusion. That case arose under section 435-a of the Penal Law, which, like section 201-a of the Agriculture and Markets Law, forbids representing as “ kosher ” food not sanctioned by orthodox Hebrew religious requirements. It was there held that a group of local rabbis in New York City could not decree that the affixation of a kosher tag was in and of itself a religious requirement without which poultry would not be considered kosher, thus incorporating the necessity for such tag into the Penal Law by reference. That was in 1940. Thereafter, in 1942, the Legislature itself, in the light of this history, promulgated the requirement in the Agriculture and Markets Law that a plumba or other mark be employed to indicate that a food product was kosher. "Whether or not such marking could be made an indispensable prerequisite for conformity to religious requirements, on and after that date it was clearly the requirement of the secular statutory law.
After warning by Department of Markets employees, defendant had previously promised to comply and affix its own tags, but was subsequently advised (incorrectly, it turns out) that this was not necessary. As there was no actual fraud or deception here, and in view of all the circumstances, the penalty imposed for this violation is fixed at $25.