OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiff, on this motion, seeks to enjoin police officers of the New York City Transit Authority (T.A.) from issuing summonses and tickets in what is alleged to be a campaign of harassment and intimidation. Defendant authority, and the individuals alleged to be guilty of such harassing conduct oppose, without contradicting the facts set forth by the plaintiff, on the ground that as a matter of law there are appropriate remedies in actions at law for police abuse or malicious prosecution. Defendants rely almost entirely upon the sweeping statement set forth in Delaney v Flood (183 NY 323, 329), that “equity will not interfere to prevent the enforcement of the criminal law.” They rely heavily upon cases such as Kelly’s Rental v City of New York (44 NY2d 700, modfg 52 AD2d 904), where, as here, operators of private car services sought an injunction and a declaratory judgment to prevent defendants from issuing summonses. The court there held (p 702) that “[a] party against whom a criminal proceeding is pending may not seek declaratory relief.”
*825 While undoubtedly the burden is heavy on a party seeking to enjoin future acts of law enforcement officers, when an appropriate case is made out, a court of equity may act. The seminal case, Allee v Medrano (416 US 802), approved the propriety of a court of equity in enjoining law enforcement officers from a course of harassment, abuse, selective enforcement of the law and the filing of baseless charges. In that case, the trial court found that pursuant to a plan by the defendants, there was a pervasive pattern of intimidation in which the law enforcement authority sought to suppress a citizen’s constitutional rights. The authority was found to be enforcing valid laws in an unconstitutional manner (supra, p 812).
In this case, the moving papers, which are essentially uncontradicted, make out a very persuasive case of attempted intimidation and harassment by law enforcement officers. It is alleged that plaintiff is the operator of several 15-passenger vans, providing rides from the homes of passengers to their place of business on a contract basis. The business had its genesis at the time of the subway strike, when alternative modes of transportation into Manhattan were sought. Many of the passengers who rode with plaintiff as a temporary expedient sought to continue the service after the strike was settled.
In 1981, plaintiff applied for and received a New York State permit from the Department of Transportation. This was 1 of 10 such permits which were issued for this type of operation in New York City. Plaintiff did not come within the regulations for operation as a taxi or livery service, nor for an omnibus franchise. The Transit Authority vigorously opposed the issuance of the permit to plaintiff. Nevertheless, upon review it was found that the service provided by plaintiff would be consistent with the public interest and that the service was preferred by members of the public over subways or buses, even though the fares charged were substantially higher.
Plaintiff operates on a reservation basis, picking up his passengers by prearrangement on a round-trip basis. He asserts that he does not stop for passengers who might hail his vans from the street.
*826 The plaintiff alleges that the Transit Authority, having failed to achieve the denial of plaintiff’s permit in legal proceedings, began a campaign of harassment by pulling members of the transit police out of the subways and detailing them to a special task force to ticket the plaintiff and other van operators. Metropolitan Transportation Authority vice-chairman Lawrence Bailey is quoted in newspaper articles annexed to the moving papers as being “appalled at seeing people coming out of the subways and looking for their favorite van. They’re diverting money when we need it badly.” As a result, he says he “spurred the enforcement drive.” But legal competition by duly authorized operators, even with municipal transportation systems, is not a crime. Pretexts should not be sought to equate competitive acts with criminal acts.
During an 11-week period, the transit police issued 17 parking violations and 62 criminal summonses to plaintiff. In addition, he claims that one of his vans was deliberately rammed by a New York City bus. Press reports annexed to the papers indicate that during this period hundreds of tickets were being issued to van operators. Apart from the contention of plaintiff and other van operators that there was no basis for the issuance of such tickets and that they are virtually all dismissed when they are heard in court, the major complaint is that virtually every time a transit police officer stops a van to ticket it, it is held for up to one hour before being permitted to proceed, while the passengers fret and fume, with a consequent loss of business.
Tickets are issued for such offenses as “Unlicensed Hack”, which appears to be inapplicable to a contract carrier of passengers; “Unlicensed Limousine Operator”, while plaintiff does not operate a limousine; “Unlicensed Chauffeur” and “Unlicensed Operator of a Bus”, even though the stipulated definition of a bus is a vehicle with a capacity of more than 15 adults. (Vehicle and Traffic Law, § 104.) Tickets were also issued for “Uninsured Vehicle” and “Unregistered Vehicle”, even though plaintiff claims to have exhibited both his insurance and registration cards. There are other tickets for traffic violations such as making an illegal turn (after having been directed to make the turn by the T.A. officer) and parking near a fire
*827 hydrant after the T.A. officer ordered the vehicle to be parked there. Some tickets are for picking up passengers on hailing, which plaintiff denies was ever done. Virtually all tickets are dismissed when they come up in court.
While this court has no intention of passing on the validity or invalidity of the tickets previously issued, and has no intention of interfering with their orderly disposition in the criminal court, plaintiff makes out a persuasive case that it appears to be the intention of the defendants to harass his van operation, to deluge him with a flood of tickets and impede and interfere with the operation for which he has a legal permit and to drive him out of business.
The transit officers, when questioned by plaintiff as to the reasons for their campaign, allegedly answered that they had been ordered to do so by their boss. It is precisely under these circumstances that a court of equity may act to enjoin law enforcement officers from the prospective continuation of unlawful practices. Under section 1983 of title 42 of the United States Code, as indicated in Allee v Medrano (416 US 802, supra), the enjoining of future conduct would create no interference with prosecutions presently pending in the lower court. At the same time, plaintiff should not be required to litigate and relitigate endless streams of tickets in the future if they are baseless and when the time consumed in receiving those tickets and successfully defending against them cannot remedy the loss of passenger service. It would be a pyrrhic victory indeed for plaintiff ultimately to defeat future charges brought against him in traffic court and criminal court and nevertheless find that he has been driven out of business.
The cases cited by defendants have no real applicability and may be distinguished from the present situation. Reed v Littleton (275 NY 150), deals with the undesirability of a court of equity intervening with enforcement of the law as a means of stopping a pending prosecution. Kelly’s Rental v City of New York (44 NY2d 700, supra), likewise dealt with an attempt to head off pending criminal proceedings by asking Special Term for declaratory relief. While it is certainly true that this court cannot and will not render plaintiff immune from future attempts at law enforcement, *828 it can determine that certain kinds of conduct are unreasonable and without basis. No other course can prevent unwarranted harassment and intimidation. Appropriate attempts, even if misguided, to enforce the law will be countenanced by a court of equity. If, as here alleged, the so-called law enforcement efforts are part of a scheme by a governmental authority in the proprietary business of transportation to drive out unwanted competition, the matter stands in a different posture. Zeal in carrying out the law may be applauded while schemes to pervert the law would receive ready condemnation.
Given the facts alleged here and essentially uncontradicted, the plaintiff has made a sufficient showing of the likelihood of success in obtaining an injunction to prevent a scheme of illegal activity by law enforcement officers to throttle competition and drive plaintiff out of business. To prevent further irreparable injury, a limited injunction is warranted. In so concluding, this court is not unmindful of the decision of Mr. Justice Rubin in Supreme Court, Richmond County, in Cullenen v McGuire (index No. 1352/82) where 345 summonses had been issued to van operators like plaintiff in a one-month period. I disagree, however, with his view of the limited power of the courts.
Accordingly, this court will grant plaintiff’s motion for a temporary injunction enjoining the New York City Transit Authority and all persons acting under its direction or control from harassing, interfering with, or delaying the operation and conduct of plaintiff’s business by:
(1) issuing summonses for failure to have a permit, franchise, insurance or registration or for illegally operating a bus (provided, of course, that plaintiff maintains his permit, registration and insurance);
(2) from issuing tickets or summonses for alleged illegal conduct which results directly from following the directions of a law enforcement officer (i.e., directing a vehicle to make a turn or park at a hydrant);
(3) detaining any vehicle of the plaintiff beyond the time reasonably necessary for writing out an appropriate ticket or tickets and in no event to detain any such vehicle for such purposes for more than 10 minutes.
*829 The Transit Authority and its officers are still empowered to issue tickets where appropriate for any van exceeding its permitted powers, accepting hails or violating sections of the Vehicle and Traffic Law. It is the concerted campaign and the baseless charges designed only to harass which this court will enjoin. In this respect, the injunction order herein is considerably narrower in scope than that approved in Allee v Medrano (416 US 802, 811, n 7, supra).
Settle order providing for the payment of a minimal bond during the pendency of the temporary injunction and setting the case for trial and filing a note of issue.