OPINION OF THE COURT
Edward J. Greenfield, J.
In a complex society, no matter how free, man is subjected to a surfeit of rules, regulations, and laws to define the relationships between persons, and the obligations each individual has to society, and to government, its organized form. *885 But since man is not alone, but exists symbiotically with animals which he adopts, employs, exploits, or consumes, the creatures he controls may also be subject to regulation. The beast of the jungle or the field may be free, but the beast of the city is governed by law. "Dogs, then, by reason of their nonhuman condition, are not exempt from the plethora of detailed regulations which afflict mankind as fleas afflict beagles.” (Schnapp v Lefkowitz, 101 Misc 2d 1075, 1080.) If the condition under which dogs may exist in urban surroundings can be subjected to statutes, regulations, and ordinances, so too can the circumstances under which one may keep pigs (Servodidio v Board of Appeals, 146 NYS2d 125), bees (Olmsted v Rich, 53 Hun 638, opn in 6 NYS 826) or pigeons (People v Benincasa, 63 Misc 2d 648).
In this case, the animals affected are horses — not the awesome creatures ridden by the police, the gaily caparisoned participants in the circus parade, or the sleek mounts cantering on the bridle paths, but those patient beasts and their carriages who draw the tourists, the romantics, and those who yearn with nostalgia for another and gentler age. Because both horse and passenger may be subjected to abuse, provisions have been enacted in the Administrative Code of the City of New York authorizing the licensing, inspection and investigation of horse-drawn cabs. (Administrative Code, tit 20, ch 2, subch 21.) Enforcement of the licensing and regulation is vested in the Department of Consumer Affairs (Administrative Code § 20-101).
Plaintiffs, the New York Horse & Carriage Association, and various individual owners and drivers of the city’s fleet of horse-drawn cabs, have commenced this action to declare (1) that certain provisions of the Administrative Code dealing with licensing are unconstitutional; (2) that the policies and procedures of the Department of Consumer Affairs violate due process; and (3) that decisions of the Department assessing fines and revoking or suspending licenses were arbitrary and capricious. Plaintiffs have moved for summary judgment, and defendant cross-moves for summary judgment dismissing the complaint.
A declaratory judgment action is the "proper vehicle to review the validity of a legislative act” (Doe v Axelrod, 136 AD2d 410, 430-431; Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 192). Moreover, it is a proper vehicle for invalidating an unconstitutional application of a statutory provision. "The exercise of a power which offends against the *886 Constitution may be attacked at any time. * * * The [defendant agency] cannot give legality to an unconstitutional or void statute by exercising power under it.” (Lutheran Church v City of New York, 27 AD2d 237, 239.)
UNCONSTITUTIONAL VAGUENESS
Administrative Code § 20-373 makes it unlawful to operate a horse-drawn cab within the city unless a license has first been obtained. All horse-drawn cabs are to be inspected to ensure that they are fit for operation at least once every four months, the rates charged are regulated (Administrative Code § 20-380), and the Commissioner is empowered to promulgate such rules and regulations as are necessary to carry out the provisions of the code. The Commissioner is empowered to suspend or revoke any horse-drawn cab license or driver’s license for noncompliance with the code or applicable regulations.
One of the principal points of contention of the plaintiffs is that different inspectors come up with varying interpretations of the code provision for display of the license. Hence, they argue, the provision giving rise to so many disparate interpretations must be deemed unconstitutionally vague, since it is not apparently clear to persons of presumably common intelligence. The void-for-vagueness doctrine embodies a " 'rough idea of fairness’ ” and "the most common standard by which the sufficiency of statute is measured when attacked for vagueness is that it must not be so drawn that men of common intelligence must necessarily guess at which conduct is prohibited”. (Quintard Assocs. v New York State Liq. Auth., 57 AD2d 462, 465, mot to dismiss appeal granted 42 NY2d 973.) It is plaintiff’s contention that Administrative Code § 20-375 fails the test posed by this standard.
A statute which is so vague that people of common intelligence must necessarily speculate as to its meaning in the absence of some comprehensible standard or guide cannot pass constitutional muster. (Smith v Goguen, 415 US 566; Papachristou v City of Jacksonville, 405 US 156; Trio Distrib. Corp. v City of Albany, 2 NY2d 690.) However, the fact that people may differ in construing a statute or in applying it does not mean it is void for vagueness. If that were so, then every statute on which Judges have differed as to meaning or application, or on which appellate courts have divided would be subject to being stricken for vagueness.
The statute is void only if it specifies no guide or standard *887 at all (Coates v City of Cincinnati, 402 US 611, 614), but not if there is a comprehensible normative standard capable of interpretation. Statutes, of necessity, must speak in generalities, leaving application as to each specific case to the reasonableness and discretion of executive, administrative, and judicial officers. "[I]t is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexibility in the adaptation of the legislative policy to infinitely variable conditions constitute the very essence of the programs. Rather, the standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied”. (Matter of Nicholas v Kahn, 47 NY2d 24, 31.)
If we can deal with broad and flexible statutory terms like "reasonableness”, "due process”, or "unconscionable”, which are designed to permit a considerable degree of judgment and discretion to fit the circumstances, we are certainly not compelled to grope and stumble in the dark and make arbitrary guesses as to the meaning of such terms as are here presented —"securely affixed” and "conspicuous and indispensable”.
Administrative Code § 20-375 provides, in pertinent part, that the license plate is to be: "securely affixed to a conspicuous and indispensable part of such * * * horsedrawn cab, on which shall be clearly set forth the license number of such * * * horse-drawn cab.”
The word "conspicuous” is a term found in many statutory requirements, most notably in statutes specifying that a notice or document be posted in a conspicuous place. Statutes using the term "conspicuous” are not lightly to be stricken down for vagueness. A quick search reveals that the requirements that something be conspicuous is used in 236 New York statutes, covering everything from the Agriculture and Markets Law to the Uniform Commercial Code. It is one of those words about which it can be said, "Everyone knows it when they see it.”
The dictionary definition of the word "conspicuous” is "easy to notice; obvious.” Its plain meaning when used in a statute is that the required notice or document be displayed openly, notoriously and available for all to see, and not hidden or concealed. Licenses must not only be obtained, but displayed in a conspicuous place, for it is not enough that everything be kosher, but it must appear to be so as well. (People v Johnson Kosher Meat Prods., 42 Misc 2d 534.)
Horse-drawn cabs are not the only enterprises singled out; licenses must be obtained and conspicuously displayed by taxi *888 drivers, barbers and hairdressers, by bars and by plumbers, by check cashers, pharmacies, employment agencies and upholsterers, by billiard parlors and by funeral parlors, and even in the stables of certified stallions in the public service. (Agriculture and Markets Law former § 103.) The CPLR uses term in connection with the service of papers (CPLR 2103 [b] [3]), and even the great writ of habeas corpus can be served by being "affixed” in a "conspicuous place”.
When the word "indispensable” is added to the term "conspicuous”, it adds to, rather than detracts from the meaning. It clearly denotes that there must be attachment to some visible and necessary component which cannot be removed or set aside at whim, but is an inherent and integral part of the whole. The Department has agreed that a license posted on the side or back panels of the carriage meets the requirements of a "conspicuous” and "indispensable” place.
The term "securely affixed” likewise has a clearly understood meaning in this context. It means that the license is not only to be conspicuously displayed, but that it is not to be removable or reversible by whim or by accident. The entire thrust of the statute is to call for an open, obvious and fixed display of the license so that the operator can be easily identified by the police, the public or departmental investigators. It is not necessary that the statute specify the precise location for display of the license as long as it meets the requirements of visibility and permanence, giving the carriage owner some flexibility to determine the best location and means for attachment, depending on the nature of the carriage on which it is displayed. The method of affixation is to be "secure”, whether by bolts, screws, nails or glue, so that it cannot readily be removed or concealed. This gives the carriage owner greater leeway than is afforded the owner of a motor vehicle, who has specific front and rear locations set aside for display of the license. Such flexibility cannot be equated with impermissible vagueness.
"The cornerstone of administrative law is derived from the principle that the Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation * * *.
"Thus, it is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexi *889 bility in the adaptation of the legislative policy to infinitely variable conditions constitute the very essence of the programs. Rather, the standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied.” (Matter of Nicholas v Kahn, 47 NY2d 24, 31, supra.)
The defendant Department asserts that it has always allowed the cab’s license to be attached to the back right- or left-hand side of the carriage depending on the design and construction of the carriage. It is agreed, henceforth, that the drivers may cover their home addresses on the licenses displayed in the field. No intelligent operator or driver, and no inspector possessing common sense, is required to guess at what is to be done with respect to display of the license. This court has no hesitancy in declaring that Administrative Code § 20-375 is not unconstitutionally vague, and sets forth an adequate and constitutional standard for the guidance of all.
DELAYED ISSUANCE OF VIOLATIONS
It is also claimed by the plaintiffs that there is a violation of their due process rights because of the lapse of time that intervenes and between a claimed violation and the actual making of the charge and the notice of the hearing on it. Pursuant to applicable administrative practices, the defendant serves notices of violations and hearings 8, 9 or even 10 months after such violations are observed by defendants’ agents. Plaintiffs complain that this practice causes hardship because it is difficult to gather witnesses or evidence to establish a defense more than a short time after the date of the alleged violations. Plaintiffs contend that many potential witnesses who might testify favorably in an administrative proceeding are tourists who are long gone from New York City and unreachable when the notice of violations is served after such a long intervening period.
Of course, it is basic that due process "means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal”. (Matter of Hecht v Monaghan, 307 NY 461, 470.)
Lapse of time between the offense and the hearing may make it more difficult to recollect the circumstances, or to *890 round up witnesses, but that does not rise to the level of a constitutional deprivation. After all, many criminal cases with more serious charges do not come up for trial until many months, or even years after the offense. The effect of a time lapse is problematical. The cab driver and the owner are themselves available. The chance of locating other witnesses who are mostly out-of-towners or other wayfaring strangers and passers-by is slim, whether it be one day after the event, or several months.
"Where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of liability is adequate.” (Phillips v Commissioner, 283 US 589, 596-597.)
Given the existence of a three-year Statute of Limitations for the exaction of penalties or forfeitures imposed by statute (CPLR 214 [2]), the serving of a notice of violation within months of the alleged offense is not repugnant to any sense of fundamental fairness. A governmental agency is not required to bring charges instantaneously upon the discovery of a violation. The licensees are all required to maintain their records for a three-year period, so it should not be so difficult for them to establish compliance with departmental requirements.
This is not a case like Manti v New York City Tr. Auth. (121 Misc 2d 824), where a pattern of administrative harassment designed to drive van operators out of business had been demonstrated. But even there the court refused to interfere with the orderly disposition of individual charges already pending, which were to be adjudicated on an individual basis, and declared that tickets could still be issued for violations of the law which had some foundation in fact. This court is not prepared, on the asserted grounds that several months have elapsed between violation and hearing, to vacate pending violations on a wholesale basis, and to grant blanket absolution for both pending and decided matters.
INSPECTIONS WITHOUT PRIOR NOTICE
Finally, the plaintiffs ask this court to declare by judgment that the defendant’s practice of conducting inspections of horse-drawn cabs without prior warning violates the plaintiff’s rights to be secure from unreasonable search and seizure pursuant to the Fourth Amendment of the Constitution of the United States.
*891 It is well settled that Fourth Amendment rights of operators of commercial enterprises "have lessened application” in a " 'closely regulated’ ” trade or industry. (New York v Burger, 482 US 691, 702.) "[W]here the privacy interests of the owner are weakened and the government interest in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.” (Supra, at 702.)
This court finds that the defendant has established a " 'substantial’ government interest that informs the regulatory scheme pursuant to which the inspection is made.” (Supra, at 702.) Horse-drawn cabs provide a service to the public-at-large and make use of public thoroughfares to do so. By their very nature, horse-drawn cabs may create hazards or obstructions with respect to the flow of traffic generally, and be environmentally burdensome with respect to the animal waste which are a necessary part of their operation. Treatment of the animals involved must be on a humane basis, and the general public is not to be victimized or "taken for a ride”. Administrative Code § 20-371 makes clear that the legislative policy behind the regulatory scheme is based on a prior history of "evils and hazards which existed in the absence of governmental supervision.”
Unannounced and spot searches conducted by defendant pursuant to Administrative Code § 20-378 are "necessary to further [the] regulatory scheme”. (Donovan v Dewey, 452 US 594, 600; United States v Biswell, 406 US 311.) Indisputably, unannounced inspections are necessary for the effective implementation of the regulatory program. Such inspections can serve as an effective deterrent, and advanced notice of inspection would frustrate the regulatory scheme by forewarning the licensee, giving him the opportunity, for a short time, to "clean up his act”. Undercover investigations are unfortunately the most effective way to turn up abuses such as rate overcharges. Surprise is an essential element of effective enforcement.
Finally, the court finds that the applicable statute under which inspections are conducted meets the constitutional requirements as to notice and scope. Administrative Code § 20-378 specifies regular inspections "at least once every four months.” Administrative Code § 20-377 provides that the objective of the inspection is to determine if the horse-drawn cab *892 is fit for operation. The Department of Consumer Affairs has not been shown to have acted unreasonably.
The moving papers set forth no basis for any judicial finding or declaration that the Department’s actions, or the statutes under which it acts, suffer from any constitutional infirmity, procedural or substantive. Plaintiff’s motion for summary judgment is denied, and defendant’s cross motion for summary judgment dismissing the complaint is granted.