OPINION OF THE COURT
Franklin R. Weissberg, J.
The petitioners in these three CPLR article 78 proceedings seek a judgment declaring 16 regulations adopted by the respondent New York City Taxi and Limousine Commission (TLC or Commission) null and void and enjoining the respondents from implementing and enforcing these regulations.
The three proceedings are consolidated herein for decision. As a preliminary matter, since petitioners (hereinafter petitioner) in all three proceedings seek declaratory and injunctive relief, the lawsuits should have been brought as declaratory judgment actions rather than article 78 proceedings. Accordingly, the proceedings are hereby converted into declaratory judgment actions pursuant to CPLR 103 (c). (See, Matter of Gordon v Village of Monticello, 207 AD2d 55, 57, n 2 [3d Dept 1994], revd on other grounds 87 NY2d 124 [1995].)
The Promulgation of the Challenged Regulations
The TLC is composed of nine members, one of whom is designated to act as chairperson and chief executive officer. The TLC has been delegated the authority for regulating and supervising “the business and industry of transportation of *858 persons by licensed vehicles for hire in the city” (NY City Charter [City Charter] § 2303 [a]). This authority specifically includes (1) the regulation and supervision of standards and conditions of service, (2) the issuance, renewal, suspension and revocation of licenses to operate or drive taxicabs and certain other vehicles for hire within the City of New York, (3) the establishment of safety standards, and (4) the imposition of insurance and financial requirements for the owners and drivers of licensed vehicles for hire. (See, City Charter § 2303 [b].) Under section 2303 (b) (11) of the City Charter, the Commission is empowered to promulgate rules and regulations which carry out these purposes. (See also, Administrative Code of City of NY § 19-503.)
Taxicabs are defined under the Administrative Code as TLC-licensed vehicles designed to carry a maximum of five passengers and permitted to accept hails from passengers on the street. (See, Administrative Code § 19-502 [Z].) Pursuant to its rule-making authority, the TLC has promulgated regulations setting forth the licensing requirements and other standards and criteria for the ownership of licensed taxicabs. (See, 35 RCNY ch 1 [entitled “Taxicab Owners Rules”.]) The TLC has also promulgated regulations setting forth the licensing requirements and other standards and criteria for persons licensed to drive a taxicab within the City of New York. (See, 35 RCNY ch 2 [entitled “Taxicab Drivers Rules”].)
In January 1998, the TLC drafted a proposal for amending the Taxicab Owners Rules so as to require that taxicabs employ an auxiliary air conditioning system that would cool the rear compartment directly rather than, as the regulations had previously required (35 RCNY 3-03 [e] [5] [vi]), merely convey cooled air from the front compartment to the rear. Under the City Administrative Procedure Act (CAPA), an agency which seeks to promulgate rules and regulations must provide the public with an opportunity to submit written comments on the rules and must conduct a public hearing at which interested persons are afforded the opportunity to comment orally on the rules. (See, City Charter § 1043 [d].) In addition, the agency must publish the proposed rules, together with a statement of their basis and purpose, in the City Record at least 30 days prior to the public hearing. (See, City Charter § 1043 [b].)
On January 16, 1998, the TLC published a copy of the proposed new air-conditioning rule in the City Record along with a statement of the basis and purpose of the rule. The notice advised the public that written comments on the proposed *859 rule could be submitted to the Commission for consideration until February 18, 1998 and that a public hearing would be held on February 19, 1998 at the TLC offices located on Rector Street. On February 19, 1998, the hearing was held as scheduled and numerous persons, including various representatives of the taxicab industry, were afforded an opportunity to testify about the proposed air-conditioning rule. As a result of the hearing, an advisory committee was established to explore a number of questions which had been raised about the proposed rule. The advisory committee reported back to the TLC staff later that spring.
In the meantime, in April 1998, the TLC drafted 17 other proposals for amending various provisions of the Taxicab Owners Rules and the Taxicab Drivers Rules. These proposed regulations imposed financial disclosure requirements on taxi owners, established a “Persistent Violator Program” under which a point system was devised for certain rule violations which could lead to suspension or revocation of a taxicab driver’s license, increased the requisite insurance coverage for each taxicab and required that taxicab owners respond to all TLC calls within 24 hours. The proposals also included the requirement that applicants for a taxicab driver’s license be tested for drugs and controlled substances, and complete a defensive driving program authorized by the Commission. On April 27, 1998, the TLC published its 17 proposed amendments in the City Record and advised that a public hearing in connection with the proposed rule change would be held on May 28, 1998 at the TLC offices located on Rector Street and that written comments could be submitted to the Commission up to and including May 27, 1998. Thereafter, the location of the hearing was changed to the World Trade Center and notice of this change was published in the City Record on May 22, 1998. The location was again changed and notice thereof was published in the May 26, 1998 issue of the City Record.
The public hearing on the 17 proposed amendments was held, as scheduled, on May 28, 1998. The hearing began at approximately 9:30 a.m. and the first order of business was a Commission vote on the proposed air-conditioning regulation. The measure was passed. The hearing then moved on to a discussion about the 17 proposed amendments. At the conclusion of the hearing that day, the Commission voted on 15 of the 17 proposals. All of these 15 proposed amendments were approved, some with modifications. The two proposals which were not voted on, the requirement that taxicab owners obtain *860 a $100,000 surety bond and the TLC’s use of the New York State Department of Motor Vehicles point system to penalize taxicab drivers, were tabled for possible later consideration.
The Omnibus Challenge to the Regulations
In the proceeding brought by the New York City Committee for Taxi Safety, the petitioner raises two procedural challenges to the entire body of the 15 new regulations and, in addition, offers a number of substantive reasons why each of the regulations should be invalidated.
The petitioner’s first procedural challenge is based on the provision in CAPA which requires that notice of the time and place of a public hearing on proposed agency rules be published 30 days prior thereto. (See, City Charter § 1043 [b].) The petitioner suggests that this provision is inflexible and that if the agency changes the location of a hearing after notice has been published, it must reschedule the hearing for a date at least 30 days after republication of the notice with the new address. There is nothing in CAPA which supports such rigidity. Indeed, under the statute, the agency need not even hold a public hearing so long as it publishes in the notice of proposed rule making in the City Record a statement that a public hearing would serve no public purpose. (See, City Charter § 1043 [d].) Moreover, the TLC afforded the public and the taxicab industry adequate notice and opportunity to comment on the proposed regulations. There is no evidence in the record that anyone, much less a substantial number of persons, failed to make their views known because of inadequate notice of the change of place where the hearing was held.
On the contrary, the record indisputably establishes that the taxicab industry received a fair hearing and had a significant impact upon the Commission’s decision-making process. Two of the regulations with which the taxi industry was most concerned and about which they most vociferously complained, the surety bond requirement and the use of the State point system to penalize taxicab drivers, were tabled. Other proposed regulations were modified. The fact that the industry was only partially successful in its challenge to the Commission’s proposed rules does not mean that its voice was not heard in a meaningful way.
In petitioner’s second procedural challenge to the amended regulations, it argues that the regulations must be invalidated because they were promulgated without a fact-finding hearing having been held. This argument is without *861 merit. An administrative regulation which is legislative in character will be upheld as valid if it has a rational basis and is neither unreasonable nor arbitrary and capricious. (See, Matter of Levine v Whalen, 39 NY2d 510, 518 [1976].) In Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health (85 NY2d 326, 332 [1995]), the Court of Appeals stated that “Although documented studies often provide support for an agency’s rule making, such studies are not the sine qua non of a rational determination * * * ‘the commissioner, of course, is not confined to factual data alone but also may apply broader judgmental considerations based upon the expertise and experience of the agency he heads’ (see, Matter of Catholic Med. Ctr. v Department of Health, 48 NY2d 967, 968-969).”
In addition, it is well established that regulations such as those which are challenged in this proceeding carry “a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for [their] provisions” (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540-541 [1956]), and that judicial interference is not warranted if the regulations are supported by “any state of facts, known or to be assumed” (supra, at 541; see also, Noyes v Erie & Wyo. Farmers Co-op. Corp., 281 NY 187, 195 [1939]). Indeed, in Bakalar v Lazar (71 Misc 2d 683, 686 [Sup Ct, NY County 1972]), the court rejected the same argument as petitioner makes in this proceeding that TLC regulations were improperly adopted without official documentation supporting the purported reasons for their promulgation.
Here, in the “Statement of Basis and Purpose” which is attached to each of the 15 regulations, the TLC has indicated that the amendments are based on information which the Commission received as well as on its own perception of changes that should be made in the rules governing the taxicab industry. The rationality of each of these regulations turns on whether they are reasonably related to legitimate governmental objectives. (See, Big Apple Food Vendors’ Assn. v City of New York, 228 AD2d 282 [1st Dept 1996].) It does not turn on whether, as petitioner argues, there is factual data which establish that these amendments are necessary.
In this respect, the petitioner argues that the financial disclosure regulation is invalid because, inter alia, it does not advance a legitimate governmental objective. This regulation (35 RCNY 1-02 [g]) requires that each officer or shareholder of a corporate taxicab owner disclose to the Commission every *862 other licensed taxicab in which he or she has a financial interest. In view of the fact that the regulations previously required that corporate owners disclose the identity of all such officers and shareholders, the Commission already has information on file identifying all individuals having an interest in taxicab ownership. On its own, the Commission could cross-reference this information and compile a list of all of the taxicabs in which a particular individual has an ownership interest. By requiring that the individuals themselves prepare the list, the Commission has merely sought to facilitate the process as a matter of administrative convenience and efficiency. The regulation clearly advances this legitimate objective.
The petitioner, however, also claims that the Commission is without statutory authority to require such disclosure, that the imposition of this requirement is an improper intrusion into the exclusive domain of the Legislature and that the mandated disclosure of corporate officers and shareholders is preempted by the Business Corporation Law. All of these arguments are beside the point since the existing regulations essentially already require the disclosure of this corporate information. In any event, these arguments are without merit. The City Charter delegates broad authority to the TLC to adopt regulations relating to the taxicab industry. The identity of the principal actors in a corporation which owns a taxicab and the identification of all taxicab licenses in which such individuals have an ownership interest is surely relevant to the regulation of the industry. As to preemption, there is nothing in the Business Corporation Law which indicates that the State Legislature intended to preclude cities and their agencies from ascertaining the identity of the shareholders and officers of a corporation which obtains a city license to engage in a particular activity. Nor is there any provision of the Business Corporation Law which conflicts with this requirement. Finally, the petitioner has not referred the court to any support for its assertion that only a legislative body may require the disclosure of corporate participants. Such actions appear to the court to fall squarely within the authority of an administrative body. (See, Pavle-Marty Cab Corp. v City of New York, 48 NY2d 784 [1979].)
The regulation also imposes on the officer, shareholder and corporation a duty to file a statement which discloses the individual and corporate assets, liabilities, income and net worth. (35 RCNY 1-02 [Z].) In the Statement of Basis and Purpose which is attached to the regulation, the TLC states *863 that the requirement of financial disclosure will enable the Commission to ensure that taxicab owners have sufficient income and assets to operate their businesses and sufficient assets to protect the public in the event that the owner is held liable for a personal injury or other loss. In this proceeding, the Commission further states that it has found that taxicab owners often fragment their ownership into many corporations, each of which is undercapitalized. According to the Commission, an individual who is injured by a taxicab is thus frequently unable to obtain full compensation because the corporate taxicab owner has funneled its profits towards another corporation.
Laudable as this goal may be, the proposed regulation does nothing to accomplish its objective. In the absence of a requirement that all corporate officers and shareholders maintain a minimum level of assets, the mandatory financial disclosure imposed by the regulation serves no apparent purpose. Thus, the regulation unnecessarily imposes stringent and onerous disclosure requirements upon officers and shareholders. Accordingly, I find that the financial disclosure requirement imposed under 35 RCNY 1-02 (l) is not rationally related to a legitimate governmental purpose and this provision is therefore annulled.
The petitioner also challenges the regulation which amends and reconstitutes the Commission’s Persistent Violator Program. Under the program which is already in place, the Commission has imposed progressive penalties upon taxicab drivers who violate various TLC driving rules. These rules cover such areas as operating an unlicensed vehicle, reckless driving and being discourteous to passengers. Under the old program, each rule was designated to fall within one of three classes. The penalties, which varied from a 30-day suspension of a driver’s taxi license to revocation, were assessed according to the number and class of the rule violations. In amending the program, the Commission has added a number of rules such as speeding and improper passing, eliminated the designation of three classes, established a point system under which each rule violation is assigned one to three points and developed a new system under which penalties are imposed according to the number of points which are accumulated within an 18-month and 24-month period. The penalties include the suspension and revocation of a driver’s taxi license.
The petitioner argues that the new regulation should be invalidated because, inter alia, the program imposes penalties *864 for conduct, such as discourteousness to passengers and not using the shortest reasonable route, which are unrelated to passenger safety. The Commission’s broad authority to regulate the taxicab industry is not, however, limited to ensuring passenger safety. The City Charter expressly delegates to the TLC the authority and obligation to establish standards of passenger service. (See, City Charter § 2300.) Taxicab riders are entitled to safe, courteous and responsible service. The Commission’s right to make rules to attain that objective is beyond challenge. It is therefore entirely reasonable for the Commission to penalize taxicab drivers for conduct which falls short of an acceptable standard of service.
The petitioner’s complaint that some of these standards of conduct, such as “discourtesy” or “shortest reasonable route”, are vague and incapable of being ascertained is without merit. Due process only requires “a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms”. (Foss v City of Rochester, 65 NY2d 247, 253 [1985].) Legislatures have regularly used broad and flexible statutory terms “which are designed to permit a considerable degree of judgment and discretion to fit the circumstances”. (New York Horse & Carriage Assn. v City of New York, 144 Misc 2d 883, 887 [Sup Ct, NY County 1989].) Here, all of the terms used by the Commission in describing conduct for which penalty points will be assessed may be given their commonly accepted meaning which, when placed in context, do not require speculation. (See, People v Illardo, 48 NY2d 408, 413-415 [1979].) Should a driver receive a summons accusing him or her of having violated one of these rules, the Hearing Officer and any other person administering the regulation will be guided by an entirely adequate standard.
The petitioner also complains that the Persistent Violator Program imposes unduly harsh penalties on taxicab drivers. Indeed, the petitioner asserts that all of the penalties imposed under the 15 regulations are unreasonably harsh. The petitioner’s assertion is without merit. The standard to be applied is whether the penalty “is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness.” (Matter of Pell v Board of Educ., 34 NY2d 222, 233 [1974]; see also, Matter of VOC Bus Corp. v Jackson, 251 AD2d 337; Mystic Cab Corp. v New York City Taxi & Limousine Commn., 243 AD2d 353 [1st Dept 1997]; Matter of Scorpio Car Serv. v New York City Taxi & Limousine Commn., 171 AD2d 872 [2d Dept 1991].) The court has reviewed each *865 of the 15 regulations and the penalties imposed for a violation thereof. The court finds that none of the penalties, including the penalties imposed under the Persistent Violator Program, is shocking to one’s sense of fairness in relation to the alleged conduct. On the contrary, they represent a rational and fair application of the Commission’s rule-making authority and a proper discharge of its obligations to the public.
Of the other 13 regulations, the only one which the petitioner has seriously challenged is the fifth. This regulation authorizes the Commission to impose fines and suspend or revoke the licenses of taxicab owners who “commit or attempt to commit, alone or in concert with another, any willful act of omission or commission which is against the best interest of the public, although not specifically prescribed in these rules.” (35 RCNY 1-60 [b] [2].) Again invoking the void-for-vagueness doctrine, the petitioner argues that this provision provides no guidance or standard for taxicab owners to follow or for administrators to apply. In view of the Appellate Division’s decision in Matter of Fernandez v New York City Taxi & Limousine Commn. (193 AD2d 423 [1st Dept 1993]), this argument is without merit. In Fernandez, the First Department rejected the argument that Taxicab Drivers rule 109 (35 RCNY 2-61 [a]), which uses language identical to the language found in the fifth regulation, was unconstitutionally vague. Since the First Department has already ruled that the language employed by the fifth regulation is not impermissibly vague in at least one application, this court is constrained to find that the regulation is not unconstitutionally vague on its face.
As to the remaining 12 regulations, the petitioner has raised only nominal objections. All of these objections are without merit. In each instance, the regulation is rationally related to a legitimate governmental objective, falls squarely within the Commission’s authority and does not violate any statutory or constitutional proscription.
Challenge to Air-Conditioning Requirement
The petitioner also alleges that the air-conditioning regulation should be annulled because the Commission failed to comply with the notice requirements found under CAPA. This allegation is frivolous. As discussed previously, the TLC complied with all CAPA requirements by giving the public 33 days’ notice of the public hearing on the air-conditioning proposal and affording ample opportunity for the submission of written comments. On February 19,1998, a public hearing was *866 held at which numerous interested parties, including representatives of the taxicab industry, expressed their opinion.
The petitioner ignores the notice which was given and the hearing which was held. Rather, it argues that since the proposed air-conditioning regulation appeared on the Commission’s agenda for a vote at the May 28, 1998 hearing, the TLC was required under CAPA to provide additional notice to the public and an additional opportunity to comment. The petitioner fails to cite any support for this argument. In fact, there is nothing in CAPA which even suggests that notice and an opportunity to comment must be provided to the public not only more than once but, as petitioner argues, every time a proposed regulation is discussed or considered at a public meeting. It would be untenable for a 30-day notice to be required for each meeting at which an agency wishes to address unfinished business. CAPA merely requires that the public be given an advanced notice of 30 days of the opportunity to submit written comments and a public hearing on a proposed regulation. The Commission complied with this requirement.
Conclusion
Accordingly, the petitioner’s request for a judgment annulling the air-conditioning regulation on the ground that it was adopted in violation of CAPA is denied. The petitioner’s request for a judgment annulling each of the other 15 regulations is denied with the exception of 35 RCNY 1-02 (Z). As to 35 RCNY 1-02 (Z), the petitioner’s request is granted and the provision is annulled.