# NEW YORK

# CRIMINAL REPORTS

## VOL. XXXVII

SUPREME COURT — APPELLATE DIVISION –
FIRST DEPARTMENT.

May 31, 1918.

## THE PEOPLE v. ISADORE ATLAS.

(183 App. Div. 595.)

(1.) SALE OF MEAT FRAUDULENTY REPRESENTED TO BE "KOSHER."
Subdivision 4 of section 435 of the Penal Law, making it a mis-
demeanor to expose for sale, with intent to defraud, meat preparations
falsely represented to be "kosher," is not unconstitutional on the theory
that it purports to make a violation of the laws of the Jewish faith a
crime, or because the crime is not sufficiently defined. This, because
the statute does not punish the wrongful sale of such meat to orthodox
Jews only, but to the public in general.

(2.) SAME.
The Legislature did not intend to use the word "kosher" in an indefi-
nite sense, but in the ordinary sense in which it is used in the trade to
designate meat prepared under and sanctioned by the Jewish religious
requirements.

(3.) SAME—CONSTITUTIONAL LAW.
Said statute is not open to the constitutional objection that it is class
legislation.

(4.) SAME.
Said statute is not unduly oppressive on dealers in meat, as intent and
false representation are essential ingredients of the crime.

(5.) SAME—EVIDENCE.

Evidence as to a sale by the defendant of meat falsely represented to be "kosher" examined, and *held*, to sustain the conviction based on a finding of knowledge and intent by the defendant.

(6.) SAME.

On the review of a conviction in a criminal case where there is any evidence of guilt, the question of reasonable doubt must be left to the jury, or trial court, and the verdict or decision on the facts must ordinarily be deemed conclusive and will not be disturbed unless it is perfectly clear that it is against the weight of evidence.

PAIGE, J., dissented, with opinion.

APPEAL by the defendant, Isadore Atlas, from a judgment of the Court of Special Sessions of the City of New York, First Division, rendered against him on or about the 2d day of March, 1917, convicting him of violating section 435 of the Penal Law in that he unlawfully and with intent to defraud exposed for sale to the public generally certain meats which he falsely represented to be kosher meat and as having been prepared under orthodox Hebrew religious requirements.

*Charles G. F. Wahle* of counsel (*Wahle & Kringel,* attorneys), for the appellant.

*Don Carlos Buell* of counsel (*Edward Swann, District Attorney*), for the respondent.

LAUGHLIN, J.:

The defendant was tried on an information filed by the district attorney charging him with having violated the provisions of section 435, subdivision 4, of the Penal Law, which, so far as material to the facts charged in the information, provides that a person who, with intent to defraud, " sells or exposes for sale any meat or meat preparation and falsely represents the same to be kosher, or as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious

requirements; or falsely represents any food product or the contents of any package or container to be so constituted and prepared, by having or permitting to be inscribed thereon the word 'kosher' in any language," is guilty of a misdemeanor. (See Laws of 1915, chap. 233.) Counsel for the appellant contends that the statute is unconstitutional and void in that it purports to make the violation of the code of laws of the Jewish faith a crime, and that the crime is not sufficiently defined. I am of opinion that there is not merit in these contentions. It appears that orthodox Jews are limited by their religion with respect to animal food, and are forbidden to partake of meat unless it has been slaughtered and prepared in accordance with the requirements of their religion, and that to this end in certain slaughterhouses animals are selected and slaughtered by and under the supervision of rabbis in accordance with the Jewish religious requirements, and then the meat is marked or labeled to indicate that it has been so slaughtered. Such meat is selected with great care, and especial cleanliness is observed in the slaughter thereof, from which a reasonable inference follows that it is of a superior quality.

The statute does not limit the sale of such meat to orthodox Jews. The sale thereof is open to the public. The purpose of the statute, manifestly, is to prevent and punish fraud in the sale of meats or meat preparation, and it only operates on those who knowingly violate its provisions, for it is expressly provided that there must be both an intent to defraud and a false representation.

Counsel for the appellant argues that the word "kosher" is an adjective, the definition and meaning of which involves a consideration of the Jewish orthodox religious requirements, which are not precise and definite, and concerning which according to one witness, thousands of volumes have been written. It needs no argument to show that it is competent for the Legislature within its general police power to enact legislation to

prevent and punish fraud and imposition. (People v. Luhrs, 195 N. Y. 377, 22 N. Y. Crim. 550; People v. Bowen, 182 id. 1.) If, therefore, the Legislature, by the use of the word "kosher" in this statute, meant something more than meat prepared under and of a product sanctioned by the orthodox Hebrew requirements, and the provisions of the statute for that reason would be too indefinite, still the information warranted the conviction of the defendant under the succeeding definite provisions of the statute, provided the evidence be sufficient. (People v. Willett, 102 N. Y. 251, 4 N. Y. Crim. 200; People v. Blanchard, 90 id. 314.) It is manifest, however, that the Legislature did not intend to use the word "kosher" in an indefinite sense, but evidently in the ordinary sense in which it is used in the trade, which is to designate meat as having been prepared under and of a product sanctioned by said religious requirements, and therefore, as I view it, the Legislature has itself definitely defined the word "kosher" as used in the statute. This construction leaves the statute sufficiently definite and confines it to those who, with intent to defraud, sell or expose for sale meat or meat preparation and falsely represent the same as having been prepared under and of a product or products sanctioned by the orthodox Hebrew requirements. It may be that those principally interested in the subject-matter of the legislation are of the Jewish faith, but the benefits of the statute are not confined to them, for it is evident that others of the general public may be interested in knowing that greater care and cleanliness have been observed in the selection and slaughter of the animals the meat of which is so known, marked or labeled, than is otherwise exercised. I am of opinion, therefore, that there is no ground for the objection that the statute is open to a constitutional objection that it constitutes class legislation.

It is also contended that the statute is unduly oppressive on dealers in meat. There would be force in that contention if

mere proof of offering for sale or sale and the fact that it had not been so prepared would authorize a conviction; but as already observed, *intent* and *false* representation are essential ingredients of the crime.

The sufficiency of the evidence to sustain the conviction is also challenged. The defendant conducted a meat market at No. 372 East Tenth street, and he dealt in kosher meat as so defined, and in other meats generally, and had a sign on his show window in Hebrew characters, "Borsho Kosher," meaning meat kosher and that the meat had been slaughtered under the supervision of a rabbi in accordance with the orthodox Hebrew requirements. At about seven-thirty o'clock on the morning of April 5, 1916, some little time after the meat market had been opened, an inspector of weights and measures of the city of New York, who had been assigned to this duty, accompanied by Rabbi Levi and one Lebow, president of the Kosher Butchers Association, entered the defendant's meat market, the defendant being present, and found a big chuck of meat exposed on the cutting block with a genuine kosher tag on the upper side of it but with the lead seal, by which it was attached and which is closed when originally attached, open, and on the under side of the chuck, in the meat or in the bone or both, there were two intersecting lines cut, making part of a cross or X; and in the icebox they found hanging another chuck, which it was conceded was not kosher meat, which had evidently been cut from the chuck on the block, for the two pieces fitted together perfectly, and when thus together, like lines found on the chuck in the icebox with the lines on the other chuck formed a perfect cross or X. Such a tag, when the seal is closed, is the identifying mark that it is kosher meat, and such a cross or X is an identifying mark that it is trefa, or not kosher meat. The defendant had been engaged in this line of business for three years, and when asked by the inspector how he came to have a kosher tag on the meat which had the trefa

sign on it, his reply was that he "gets his meat on the 'phone, and that if I go some other place, I will find the same condition everywhere." According to the testimony of the inspector when asked from whom he purchased his meat he replied, from the United Dressed Beef Company, but the tag, the seal of which was open, was a tag used by the Manhattan Dressed Beef Company and of the kind it attached to kosher meat. Both the United Dressed Beef Company and the Manhattan Dressed Beef Company were wholesale slaughterers of beef, and by each beef was slaughtered according to the Jewish ritualistic requirements by and under the supervision of a rabbi, who affixed to tags his signature and the hour of slaughter and a reference to the biblical passage which orthodox Jews were required to read during that particular week. In addition to affixing the tag as a mark, stamp or seal that the meat is kosher, three symbols or characters in Hebrew are engraved on the bone of the meat with a knife. There was no such engraving on the chuck of meat on the block, but instead the evidence shows that there was an X or cross marked on the bone.

The defendant testified that he received the meat only fifteen minutes before the inspector and others arrived and that the tag or label was then on it and that he bought his meat through slaughterhouses and that he did not cut the meat after receiving it; and he admitted that the meat they took out of the icebox was "a piece of the chuck," but he denied that it was a piece of this particular chuck. He also testified that he did not buy this meat through either the United Dressed Beef Company or the Manhattan Dressed Beef Company, but he did not say from whom he bought it, or produce any witness to corroborate him. When asked with respect to his knowledge of the marking of the kosher and trefa meat, he was manifestly evasive in his answers and pretended not to know much about them. He was asked whether he knew what the X mark on a piece of meat meant, and he replied, "It was on the underside of it." He

was asked further if he bought meat from the Manhattan Company, and his answer was, "I could not tell you it was that." He admitted that a tag on top of the meat indicated that it was kosher meat, and denied that he told the inspector that he purchased the meat from the United Dressed Beef Company.

It is quite plain, I think, that this meat was exposed for sale within the purview of the statute, and in view of the defendant's answer when asked how he came to have a kosher tag on the meat which had the trefa sign on it, and his claim, according to the inspector's testimony, that he bought it from the United Dressed Beef Company, and the other evidence to which reference has been made, I am of opinion that the court was warranted in finding that this was not kosher meat, that the defendant knew it, and that he himself attached the tag. The rule is well settled that on the review of a conviction in a criminal case where there is any evidence of guilt, the question of reasonable doubt must be left to the jury or trial court, and the verdict or decision on the facts must ordinarily be deemed conclusive and will not be disturbed unless it is perfectly clear that it is against the weight of the evidence. (People v. Long, 150 App. Div. 500, 27 N. Y. Crim. 271; People v. Seidenshner, 210 N. Y. 341, 31 N. Y. Crim. 176; People v. Katz, 154 App. Div. 44, affd., 209 N. Y. 311; People v. Rodawald, 177 id. 409, 18 N. Y. Crim. 142; People v. Becker, 215 id. 126, 33 N. Y. Crim. 133.) The conduct of the defendant indicates that he was guilty, and I think the conviction should not be disturbed.

It follows that the judgment should be affirmed.

CLARKE, P. J., SMITH and SHEARN, JJ., concurred; PAGE, J., dissented.

PAGE, J. (dissenting):

The information charges the defendant with "unlawfully, with intent to defraud, exposing for sale to the public generally

certain meat which he, the said defendant, falsely represented
to the public generally to be kosher and as having been prepared
under Orthodox Hebrew Religious Requirements," committed
as follows:

Then follow allegations as to the requirements of the orthodox
Hebrew religion in regard to the meat of certain animals
specified and certain other animals to the district attorney un-
known which should not be eaten by Hebrews unless the animal
had been slaughtered and cut by an orthodox Hebrew acting
under the authorization of a rabbi, and unless such animal at
the time of such killing was sound and healthy and without
broken ribs, and unless the knife with which such animal was
killed was in a certain specified condition, and unless the meat
had been marked by cutting the same with a knife and in other
ways, a more particular description of such markings being to
the district attorney unknown, and unless such meat was meat
which had not been marked by two straight cuts therein which
crossed each other, and meat of such animals which conformed
to such requirements among others, to the district attorney un-
known, was at all the times therein mentioned known to the
orthodox Hebrew and to others as kosher.   Then follows the
allegation that on a day certain the defendant unlawfully with
intent to defraud did expose for sale to the public generally
certain meat, and then follows a description of the meat in
similar language to that contained in the above-mentioned
specification, including the allegations as to all the things un-
known to the district attorney, and whereas in truth and fact
the meat was not kosher and had not been prepared under
orthodox Hebrew religious requirements, in that certain pieces
of such meat had been cut from an animal which had not been
slaughtered by an orthodox Hebrew acting under the authoriza-
tion of a rabbi, and certain other pieces of such meat had been
cut from an animal which at the time of killing was not sound
or healthy nor without broken ribs, and certain other pieces

of such meat which had not been killed or cut by a knife with a perfectly sharp edge, and certain other pieces of such meat were cut from the hindquarters of the slaughtered animal, and certain other pieces of such meat had not been marked by cutting the same with a knife or in any other manner, and certain other pieces of such meat were meat which had been marked by two straight cuts therein which crossed each other, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

The vice of the statute is clearly demonstrated by this information. The statute itself is so uncertain and ambiguous in its terms that no one can tell from reading it what the particular thing is that is prohibited. Nowhere is the word "kosher" which is used in the statute defined. Upon the trial of this action a rabbi was called as an expert to define the meaning of this word. He stated that it could not be defined in a word, that it meant meat which should be cut from certain portions of certain animals in accordance with the rule of the orthodox Hebrew religion by certain persons who were authorized by such rules to perform the act of slaughtering; that certain minute particulars had to be observed. The meat, although prepared in this manner, had to be kept separate and apart from any meat that was not kosher or it thereby lost its kosher condition. These rules and regulations, he testified, were to be gathered from the Bible and from certain codes of Jewish law and a large body of precedents which had been established by the rulings of rabbis in response to questions that had been propounded, and he stated that the bibliography of the question of kosher filled several thousand great volumes. When the learned district attorney attempted in the information to define the specific acts which were necessary to show that the meat offered by the defendant was not kosher, there are more specifications omitted because the district attorney confesses

that they are unknown to him than are set forth with particularity.

It is a fundamental canon of criminal legislation that a law which takes away a man's property or liberty as a penalty for an offense must so clearly define the acts upon which the penalty is denounced that no ordinary person can fail to understand his duty and the departure therefrom which the law attempts to make criminal. (Brown v. State, 137 Wis. 543, 548.) " It is impossible," says Mr. Dwarris, " to dissent from the doctrine of Lord COKE that acts of Parliament ought to be plainly and clearly, and not cunningly and darkly penned especially in Criminal matters." (Dwarris Statutes, *652.)

In a recent case (Railroad Com. v. Grand Trunk W. R. R. Co., 179 Ind. 255, 263), the Supreme Court of Indiana said: " ' The courts cannot venture upon the dangerous path of judicial legislation to supply omissions, or remedy defects in matters committed to a coordinate branch of the government. It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers.' (State v. West Side St. R. Co. [1898], 146 Mo. 155, 47 S. W. 959; Peoples v. City of Valparaiso [1912], 178 Ind. 673, 100 N. E. 70.)

" When the Legislature undertook to define an offense and provide punishment therefor in this act, it should have expressed itself in plain and specific terms. ' Every man should be able to know with certainty when he is committing a crime.' (United States v. Reese [1875], 92 U. S. 214, 23 L. Ed. 563.) ' In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty.' (Tozer v. United States [1892],

52 Fed. 917.) ' No penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it.' (Chicago, etc., R. Co. v. Dey [1888], 35 Fed. 866, 876, 1 L. R. A. 744.) An act which leaves the crime to be determined by the jury or any official body is void. A penal statute, to be enforceable, must be general in its scope and specific and certain in its provisions."

In the instant case, whether the act is violated depends entirely upon the meaning and interpretation given to it by those expert in the rules and prohibitions of the orthodox Hebrew religion. Therefore, the statute itself requiring such an interpretation is so indefinite and uncertain that it is void and should be so declared; but even if we should accept the interpretation put upon the meaning of the statute set forth in the information and testified to by the expert called upon the trial, still, in my opinion, the evidence failed to establish the offense alleged.

The meat had upon it a tag, which was conceded to be a proper certificate that the meat was kosher in all the particulars required by the rabbinical law, but there also appeared upon this meat and upon another piece from which it was claimed that this had been cut a cross mark cut into the meat which, acing to the expert testimony, was a sign that the meat was not kosher but trefa, and the conviction is predicated upon the existence of this trefa mark upon a piece of meat to which was attached a kosher tag.

There was no effort made to produce the person who sold this meat to the defendant who was a retail butcher. There was no evidence adduced that all the elaborate ceremonial of the orthodox Hebrew religion was not observed in the slaughtering of the animal nor was any other evidence given than that above specified which would tend to show either that the defendant

represented the meat to be kosher or knew that the same was not kosher or that in fact the meat was not kosher.

The judgment of conviction should be reversed and the defendant discharged.

Judgment affirmed.