[L. A. No. 26023. In Bank. Mar. 20, 1961.]

DAVID ERLICH, Petitioner, v. MUNICIPAL COURT OF THE BEVERLY HILLS JUDICIAL DISTRICT, Respondent; THE PEOPLE, Real Party in Interest.

554

Joseph W. Fairfield and Ethelyn F. Black for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood, Harry B. Sondheim and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

DOOLING, J.—Petitioner was charged in the Municipal Court of Beverly Hills with a violation of section 383b of the Penal Code. He is seeking a writ of prohibition to prohibit that court from any further proceedings against him on that charge. The charging part of the complaint alleges that defendant "did willfully and unlawfully and with intent to defraud sell to the Beverly Hilton Hotel chicken breasts which were not kosher and not prepared under and from a product or products sanctioned by the Orthodox Hebrew Religious requirements, having falsely represented the same chickens to be kosher and to have been prepared under and from a product or products sanctioned by the Orthodox Hebrew Religious requirements in violation of Section 383b, Penal Code."

The portions of Penal Code, section 383b, relevant to this proceeding read as follows: "Every person who with intent to defraud, sells or exposes for sale any meat or meat preparations, and falsely represents the same to be kosher, whether such meat or meat preparations be raw or prepared for human consumption, or as having been prepared under and from a product or products sanctioned by the orthodox Hebrew religious requirements . . . is guilty of a misdemeanor. . . .

*"The word 'kosher' is here defined to mean a strict compliance with every Jewish law and custom pertaining and relating to the killing of the animal or fowl from which the meat is taken or extracted,* the dressing, treatment and preparation thereof for human consumption, and the manufacture, production, treatment and preparation of such other food or foods in connection wherewith Jewish laws and customs obtain and to the use of tools, implements, vessels, utensils, dishes and containers that are used in connection with the killing of such animals and fowls and the dressing, preparation, production, manufacture and treatment of such meats and other products, foods and foodstuffs." (Emphasis added.)

Petitioner alleges that the statute, and particularly the language emphasized, is so vague, ambiguous, indefinite and uncertain as to be unenforceable and in this connection petitioner alleges: "that no two Rabbis can agree as to the full extent of the meaning of the word 'kosher' . . . " and that "[s]ince Penal Code § 383b defining [sic] kosher as a strict compliance with every Jewish law and custom, any slight variance on the part of your petitioner from the personal doctrine of a Rabbi convicts him of the crime, even if the sentiment does not meet the approval of other Rabbis."

In considering this claim advanced by petitioner, it is relevant to review the history, both legislative and judicial, of the provisions of the New York Penal Law upon which Penal Code, section 383b, was obviously patterned. In 1915 the New York Legislature added to the Penal Law of that state section 435, subdivision 4, which made any person guilty of a misdemeanor who, with intent to defraud, "sells or exposes for sale any meat or meat preparation and falsely represents the same to be kosher, or as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious requirements. . . ." (*People* v. *Atlas*, 183 App. Div. 595 [170 N.Y.S. 834, 835.) In the Atlas case, decided in 1918, the constitutionality of this section was attacked on substantially the same grounds urged by petitioner in his present attack on Penal Code, section 383b. We quote from that decision [170 N.Y.S. at pp. 835-836) : "Counsel for the appellant argues that the word 'kosher' is an adjective, the definition and meaning of which involves a consideration of the Jewish orthodox religious requirements, which are not precise and definite, and concerning which, according to one witness, thousands of volumes have been written. . . . It is manifest, however, that the Legislature did not intend to use the word 'kosher' in an indefinite sense, but evidently in the ordinary sense in which it is used in the trade, which is to designate meat as having been prepared under and of a product sanctioned by said religious requirements, and, therefore, as I view it, the Legislature has itself definitely defined the word 'kosher' as used in the statute. This construction leaves the statute sufficiently definite, and confines it to those who with intent to defraud sell or expose for sale meat or meat preparation and falsely represent the same as having been prepared under and of a product or products sanctioned by the orthodox Hebrew requirements." This ruling was affirmed without opinion by the Court of Appeals of New York. (*People* v. *Atlas*, 230 N.Y. 629 [130 N.E. 921].)

In 1924 in *Hygrade Provision Co.* v. *Sherman*, 266 U.S. 497 [45 S.Ct. 141, 69 L.Ed. 402], the Supreme Court of the United States passed upon the constitutionality of a successor statute to New York Penal Law, section 435, subdivision 4 (which had been held constitutional in the Atlas case), containing the same basic provision: "Sells or exposes for sale any meat or meat preparation and falsely represents the same to be kosher, or as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious

requirements. . . ." (266 U.S. at p. 498.) Against the claim that "the word 'kosher' and the phrase 'orthodox Hebrew religious requirements' are so indefinite and uncertain as to cause the statutes to be unconstitutional for want of any ascertainable standard of guilt" (266 U.S. at p. 501), the United States Supreme Court, after citing and quoting from *People* v. *Atlas, supra,* added: "It thus appears that, whatever difficulty there may be in reaching a correct determination as to whether a given product is kosher, appellants are unduly apprehensive of the effect upon them and their business, of a wrong conclusion in that respect, since they are not required to act at their peril, but only to exercise their judgment in good faith, in order to avoid coming into conflict with the statutes. Indeed, putting the statutes aside, such judgment they would be bound to exercise upon ordinary principles of fair dealing. By engaging in the business of selling kosher products they in effect assert an honest purpose to distinguish to the best of their judgment between what is and what is not kosher. The statutes require no more. Furthermore, the evidence, while conflicting, warrants the conclusion that the term 'kosher' has a meaning well enough defined to enable one engaged in the trade to correctly apply it; at least, as a general thing. If exceptional cases may sometimes arise where opinions might differ, that is no more than is likely to occur, and does occur, in respect of many criminal statutes either upheld against attack or never assailed as indefinite. . . . Many illustrations will readily occur to the mind, as, for example, statutes prohibiting the sale of intoxicating liquors and statutes prohibiting the transmission through the mail of obscene literature, neither of which have been found to be fatally indefinite because, in some instances, opinions differ in respect of what falls within their terms. Moreover as already suggested, since the statutes require a specific intent to defraud in order to encounter their prohibitions, the hazard of prosecution which appellants fear loses whatever substantial foundation it might have in the absence of such a requirement." (266 U.S. at pp. 501-503.)

When our Legislature in 1931 enacted Penal Code, section 383b, in substantially the language of the New York statutes, those statutes had already been held constitutional against the charge of indefiniteness and uncertainty by both the New York courts and the Supreme Court of the United States. As practical demonstration that the New York courts have not found statutes of this character too indefinite or uncertain to

enforce we may cite the fact that in numerous instances over the intervening years they have affirmed judgments of conviction under them. (See, e.g., *People* v. *Kipnis,* 276 App. Div. 781 [93 N.Y.S.2d 312], affd. 301 N.Y. 628 [93 N.E.2d 916] ; *People* v. *Shoshensky,* 290 N.Y. 685 [49 N.E.2d 630] ; *People* v. *Feldberg,* 267 App.Div. 999 [49 N.Y.S.2d 415] ; *People* v. *Rosen,* 264 App.Div. 887 [36 N.Y.S.2d 430] ; *People* v. *Jewish Kosher Provision Co.,* 264 App.Div. 863 [35 N.Y.S.2d 731] ; *People* v. *Grossman,* 259 App.Div. 921 [20 N.Y.S.2d 995].)

Counsel for petitioner asserts however that in adopting the definition of "kosher" in section 383b, which did not appear in any of the New York statutes, and particularly by defining "kosher" "to mean a strict compliance with every Jewish law and custom pertaining and relating to the killing of the animal or fowl from which the meat is taken or extracted," our Legislature has introduced an element of uncertainty which was not present in the New York laws.

Statutes are to be so construed, if their language permits, as to render them valid and constitutional rather than invalid and unconstitutional. (*County of Los Angeles* v. *Legg,* 5 Cal.2d 349, 353 [55 P.2d 206] ; 45 Cal.Jur.2d, Statutes, § 115, p. 624.)      This statute, having been patterned on a similar New York statute, should be given, insofar as the language is the same, the same construction as that given to the New York statutes by the courts of New York. (*Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428] ; *Canfield* v. *Security-First Nat. Bank,* 13 Cal.2d 1, 14-15 [87 P.2d 830] ; *Union Oil Associates* v. *Johnson,* 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499].) The New York court in *People* v. *Atlas, supra,* 170 N.Y.S. 834, in the passage which we have quoted construed the words "as having been prepared under and of a product or products sanctioned by the orthodox Hebrew religious requirements" as themselves being a definition of the word "kosher," or a parallel way of expressing the same idea.      The proper construction to be given to this statute is to be found by construing it as a whole and harmonizing its various parts. (*Wemyss* v. *Superior Court,* 38 Cal.2d 616, 621 [241 P.2d 525] ; *People* v. *Moroney,* 24 Cal.2d 638, 642 [150 P.2d 888].)      Applying these rules to the construction of this section, it is reasonable to conclude that the reference to "every Jewish law and custom," etc. must be construed to include only such Jewish laws and customs as are generally recognized as among "the

orthodox Hebrew religious requirements'' which must be followed in preparation of kosher meat and meat products. Exactly the same result would be reached if we accept counsel's argument that the second paragraph of section 383b is void for uncertainty. ▇ The first paragraph of section 383b is complete in itself and may be enforced without reliance upon the definition in the second paragraph, and under the doctrine of severability the claimed unconstitutionality of the second would not affect the enforceability of the first paragraph. (*In re Bell,* 19 Cal.2d 488 [122 P.2d 22] ; *People* v. *Lewis,* 13 Cal.2d 280 [89 P.2d 388].) Under either approach the statute is satisfied by compliance with ''the orthodox Hebrew religious requirements,'' and is no more onerous than the New York statute upon which it is patterned.

As pointed out by the United States Supreme Court in Hygrade, *supra,* ''the statutes require a specific intent to defraud.'' ▇ The same specifity in describing the prohibited act is not required where the violation of the statute is made to depend upon the existence of a specific wrongful intent. ▇ ''A statute will likewise be upheld, despite the fact that the acts it prohibits are defined in vague terms, if it requires an adequately defined specific intent.'' (*People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974] ; see *Williams* v. *United States,* 341 U.S. 97, 101-102 [71 S.Ct. 576, 95 L.Ed. 774] ; *United States* v. *Petrillo,* 332 U.S. 1, 7 [67 S.Ct. 1538, 91 L.Ed. 1877] ; *Screws* v. *United States,* 325 U.S. 91, 101 [65 S.Ct. 1031, 89 L.Ed. 1495] ; *Gorin* v. *United States,* 312 U.S. 19, 27-28 [61 S.Ct. 429, 85 L.Ed. 488].) ▇ Unless the People prove that the representation that the chicken breasts here involved were kosher was not only false, but was also made *with the specific intent to defraud,* petitioner cannot be convicted.

The alternative writ is discharged and a peremptory writ denied.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and White, J., concurred.

McComb, J., dissented.