**NATIONAL FOODS, INC., Plaintiff,**

v.

**Schulem RUBIN, individually and as Director of the Kosher Law Enforcement Division of the Department of Agriculture and Markets of the State of New York, Defendant.**

**No. 89 Civ. 2930 (MGC).**

United States District Court,
S.D. New York.

Dec. 18, 1989.

Stein, Zauderer, Ellenhorn, Frischer & Sharp by David N. Ellenhorn, Daniel J. Rothstein, New York City, for plaintiff.

Rosenman & Colin by Gerald Walpin, Charles E. Knapp, New York City, for defendant.

CEDARBAUM, District Judge.

This is a civil rights action brought in federal court pursuant to 42 U.S.C. § 1983, the due process clause of the Fourteenth Amendment and the commerce clause of the United States Constitution. Plaintiff National Foods, Inc. ("Hebrew National") complains of abuse of state investigatory powers by defendant Rabbi Rubin. In its amended complaint, Hebrew National seeks damages as well as injunctive and declaratory relief against Rabbi Rubin, both in his individual capacity and as Director of the Kosher Law Enforcement Division of the New York State Department of Agriculture and Markets ("the Department"), and injunctive relief against all persons acting in concert with Rubin. Defendant Rubin

has moved to dismiss the amended complaint (i) pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted, (ii) pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) on the ground that this court should abstain from considering the lawsuit, and (iii) pursuant to Fed.R. Civ.P. 12(b)(7), on the ground that indispensable parties have not been joined. Rubin has also moved pursuant to Fed.R. Civ.P. 56(b) for summary judgment on the ground that defendant is protected from litigation and liability by qualified immunity. For the reasons discussed below, the complaint fails to state a claim of deprivation or violation of constitutional rights. Therefore, defendant's motion is granted and the complaint is dismissed.

## THE COMPLAINT

The facts as alleged in the amended complaint are as follows. Hebrew National, a New York corporation with its principal place of business in New York, manufactures, processes and distributes kosher food products. Rabbi Rubin has the responsibility of enforcing New York state statutes and regulations of the Department regarding the manufacture and sale of kosher food products.

The events underlying this lawsuit began on June 19, 1985, when two inspectors from the Kosher Law Enforcement Division of the Department of Agriculture and Markets visited a Hebrew National facility in Maspeth, Queens as part of a routine inspection. At the conclusion of the inspection, a written report was issued to Hebrew National stating that Hebrew National was in full compliance with all applicable laws and regulations.

On August 22, 1986, Hebrew National relocated its plant from Maspeth, Queens to Indianapolis, Indiana. The closing of the Queens plant resulted in retaliation against Hebrew National during 1986 and 1987 by the Butchers, Food Handlers and Allied Workers Union of Greater New York and New Jersey, Local 174 (the "Union"). The retaliation by the Union consisted of, among other things, litigation, a boycott of Hebrew National's products, and newspaper advertisements denouncing Hebrew National and its products.

On May 15, 1987, Hebrew National received a letter from the Department stating that during the inspection on June 19, 1985, the inspectors had discovered that Hebrew National maintained approximately 100 pieces of boneless meat in a condition which rendered the meat "non-kosher." The letter also stated that, based on the inspection, the Department had reason to believe that Hebrew National had violated Section 201–a of the Agriculture and Markets Law and was subject to a penalty pursuant to Section 39 of that law. The Department's letter informed Hebrew National that it could settle the matter by payment of $39,800 within ten days of receipt of the letter, and that unless such payment was received, evidence of the alleged violation would be forwarded to the New York State Attorney General for the recovery of the penalty or such other action as might be warranted.

On June 5, 1987, before Hebrew National had an opportunity to respond to the letter, the Department issued a formal public release announcing the fine against Hebrew National as well as similar fines imposed against fifty-one other purveyors for violation of the kosher labelling laws. Rubin mentioned only Hebrew National in his statement to the press, asserting that a penalty against Hebrew National had been referred to the Attorney General for enforcement, describing the routine inspection of June 19, 1985 as an "early morning kosher raid," accusing Hebrew National of "allegedly misrepresenting frankfurter meat as kosher," and stating that "this great almighty company which claims to be responsible only to God has many questions to answer, to put it mildly." (Amended Complaint ¶ 16)

A few days later, Hebrew National learned that the penalty that had been as-

sessed against it was based on an altered version of the June 19, 1985 inspection report. Between June 19, 1985 and May 5, 1987 Hebrew National had never been shown the altered report and had never been informed that there was any doubt that Hebrew National was in full compliance with the applicable law. On June 12, 1987, in response to Rubin's statements, Hebrew National ran full page advertisements in *The New York Times* under the heading "Shame On You Schulem Rubin" detailing the circumstances surrounding the altered report and belated fine. Shortly thereafter, Hebrew National placed a second advertisement that described a decision by a rabbinical tribunal of the Union of Orthodox Rabbis of the United States and Canada, which held, contrary to the accusations of Rubin, that the June 19, 1985 inspection report did not suggest any violation of kosher standards by Hebrew National. Rubin responded by continuing to make derogatory statements concerning Hebrew National and its fidelity to the Jewish law.

In December 1987, six months after the Department had referred the penalty against Hebrew National to the New York State Attorney General, the Attorney General refused to bring an enforcement proceeding against Hebrew National. The Attorney General noted "that the Kosher Law Enforcement Division had failed to conduct even the most rudimentary investigation," that the charges levelled were vague and uncorroborated, and that the mishandling of this matter gave rise to an inference of impropriety and misconduct by the division and its director. (Amended Complaint ¶ 18)

On April 14, 1989, the Department issued a subpoena *duces tecum* calling for the production by Hebrew National of thousands of records relating to the processing of meat and meat products at Hebrew National's Indianapolis plant during the period between September 1, 1986 and June 1, 1988. "Rubin and/or persons acting in concert with him, have asserted that the Department of Agriculture is seeking evidence that Hebrew National has violated the kosher laws at its plant in Indianapolis,

and have threatened to stop plaintiff from bringing its products into New York state." (Amended Complaint ¶ 21)

Based on the above allegations, Hebrew National asserts violations of both the Constitution and 42 U.S.C. § 1983. Hebrew National contends that its rights under section 1983 were infringed by Rubin's violation of the establishment clause, free speech clause, and commerce clause. In addition, Hebrew National claims that Rubin's alleged conduct has directly violated its rights under both the due process clause and the commerce clause.

## DISCUSSION

### A. *Section 1983 and State Officials*

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

In support of his motion to dismiss, defendant Rubin first argues that the recent Supreme Court decision in *Will v. Michigan Department of State Police*, —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) precludes plaintiff's section 1983 claims. In *Will*, the Supreme Court held that a state official acting in his official capacity cannot be held liable for damages under section 1983. However, *Will* did not hold that section 1983 does not apply to state officials. The Court stated in footnote 10 of its opinion that a state official, even when acting in his official capacity, may be sued for injunctive relief. *Id.* —— U.S. at —— n. 10, 109 S.Ct. at 2311 n. 10, 105 L.Ed.2d at 58 n. 10. In addition, *Will* involved an official sued only in his official capacity; the decision does not appear to have altered the settled rule that a state

official sued in his individual capacity may be held liable for damages. Thus, *Will* does not preclude plaintiff's section 1983 claims.

### B. *Deprivation of Constitutional Rights*

Defendant Rubin's principal argument is that Hebrew National has failed to state a valid section 1983 claim because no actionable constitutional deprivation is alleged. Rubin argues that the amended complaint merely alleges a state tort law defamation claim, not a constitutional tort as required by section 1983. According to Rubin, the real grievance that emerges from the complaint is that Rubin's accusations of nonadherence to kosher law damaged Hebrew National's reputation and business, and that dismissal of this purely state law claim cannot be avoided by labelling it a section 1983 suit.

#### 1. Hebrew National's Due Process Claim

■ In order to establish a violation of 42 U.S.C. § 1983, a plaintiff must show deprivation of a right, privilege or immunity secured by the Constitution. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1975), the Supreme Court considered whether allegations of injury to reputation by a state official were sufficient to state a claim of deprivation of rights secured by the due process clause of the Fourteenth Amendment. The Court held that the due process clause does not transform state torts into constitutional claims, stating that the interest in "reputation alone, apart from some more tangible interests," is neither liberty nor property and is not by itself sufficient to invoke the protection of the due process clause. *Id.* 424 U.S. at 701, 96 S.Ct. at 1160.

*Paul* thus created a requirement that, in order to support a section 1983 claim based on defamation, a complaint must allege "reputation-plus." *See Rudow v. City of New York*, 822 F.2d 324, 330 (2d Cir.1987). However, the Supreme Court also stated that if a plaintiff were to allege injury to some interests more tangible than reputation alone, such injury would be compensable under section 1983. 424 U.S. at 701, 96 S.Ct. at 1160. The Court noted that examples of such tangible interests include "employment," *id.*, and rights "guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment." *Id.* at 710 n. 5, 96 S.Ct. at 1165 n. 5. *See also Marrero v. City of Hialeah*, 625 F.2d 499, 513 (5th Cir.1980) ("The holding of *Paul* does not require the dismissal of appellants' claims of injury to their personal and business reputations because ... appellants' claims, unlike those in *Paul*, do involve deprivations of constitutionally protected interests."), *cert. denied sub nom Rashkind v. Marrero*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981).

■ Hebrew National's amended complaint alleges that the defendant's conduct deprived Hebrew National of its liberty and property without due process of law. Violations of the Fourteenth Amendment including those involving the deprivation of property are clearly within the scope of section 1983. However, under the "reputation-plus" standard of *Paul*, the interest in reputation alone, apart from some more tangible interest, is not liberty or property and is not sufficient to invoke the protection of the due process clause. Hebrew National contends that its due process claims are not precluded by *Paul* because the complaint asserts deprivation of specific constitutional rights—the tangible interests that meet the requirements of *Paul*. I turn then to Hebrew National's specific constitutional claims.

#### 2. Hebrew National's Establishment Clause Claim

■ The establishment clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion ..." U.S. Const. amend. I. This clause prohibits secular government authorities from deciding theological disputes between competing views of religious law. *See, e.g., Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (Illinois state courts prohibited from decid-

ing whether defrockment of a bishop violated Serbian Orthodox Church canons, or whether Church's reorganization of its American diocese was valid under church law.) Hebrew National contends that Rubin's conduct violated this prohibition and thus establishes a basis for its section 1983 claim.

At the outset, it should be noted that Hebrew National is not challenging the constitutional validity of New York's kosher labelling laws. The constitutionality of these laws has long been recognized. *See Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925); *People v. Atlas,* 183 A.D. 595, 170 N.Y.S. 834 (1st Dept.1918), *aff'd,* 230 N.Y. 629, 130 N.E. 921 (1921).[1] Hebrew National's argument appears to be that New York's kosher food products law is constitutional only if the statute is construed to mean that state officials cannot impose their own definitions of "kosher." The Supreme Court's opinion in *Hygrade* emphasizes that a good faith effort to follow a standard religious practice does not violate the statute. *Hygrade,* 266 U.S. at 501, 45 S.Ct. at 142. The statutory penalty applies only to the meat purveyor who knowingly and intentionally passes off non-kosher goods as kosher. *Id; see also Atlas,* 183 A.D. at 596–97, 170 N.Y.S. 834. Hebrew National seems to argue that since it engages rabbis to supervise all of its meat processing and since on June 19, 1985 a supervising rabbi certified that its meat was kosher, that certification is conclusive evidence of compliance with the statute. From this premise, Hebrew National argues that in order to have charged a statutory violation, Rubin must have been applying his own theological standard which is constitutionally impermissible. Thus, Hebrew National claims that while the law as written and interpreted by the courts is constitutional, Rubin has applied it in a manner which violates the establishment clause.

Hebrew National asserts an interesting theory which has no relation to the facts of this case. No facts are alleged in the amended complaint that suggest a theological dispute or the enforcement of one form of religious orthodoxy over another. Hebrew National's amended complaint alleges no facts showing that the 1987 sanction or the 1989 investigation is based on a theological disagreement. On the contrary, the complaint accuses Rubin of intentionally fabricating baseless charges and nowhere suggests honest religious disagreement. Thus, the facts alleged in the amended complaint do not state a claim of violation of the establishment clause.

3. Hebrew National's Free Speech Claim

Hebrew National's amended complaint also alleges that Rubin instituted the current investigation in order to retaliate against Hebrew National for exercising its First Amendment right to criticize Rubin's conduct as a state official. Rubin contends that this allegation is speculative and factually unsupported and therefore must be dismissed.

Conclusory allegations are insufficient to state a claim for relief under section 1983, and Judge Goettel has suggested that more particularity is required in civil rights cases than in others. *Pettman v. United States Chess Federation,* 675 F.Supp. 175, 177 (S.D.N.Y.1987). In *Albany Welfare Rights Organization Day Care Center v. Schreck,* 463 F.2d 620 (2d Cir.1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973), the Second Circuit found that the complaint alleged no facts which supported the plaintiff's allegation that the refusal to refer children to plaintiff's day care center was retaliation designed to inhibit plaintiff's free speech rights. "Mere conclusory allegations do not provide an adequate basis for the assertion of a claim for violation of these sections [42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)]." *Id.* at 623. In that case, the

---

1. The current New York statute regarding the sale and preparation of kosher meat appears at section 201–a of the New York Agriculture and Markets Law. N.Y.Agric. & Mkts. Law § 210–a (McKinney 1989). The substance of this provision does not differ significantly from the law at issue in *Hygrade* and *Atlas.*

court dismissed the complaint as a matter of law.

The amended complaint alleges that the current investigation is being conducted to punish Hebrew National for publicly criticizing Rubin. Since the 1987 charge of violation predated any public criticism of Rubin by Hebrew National, that charge could not have been issued in response to Hebrew National's subsequent public criticism of Rubin. Thus, the only conduct on which plaintiff's free speech claim can be based is the allegation in paragraph twenty-two of the amended complaint:

> The current investigation by defendant Rubin, and the public accusations and threats against Hebrew National in connection with the current investigation, violate plaintiff's rights of free speech . . .

This conclusory assertion falls directly under the holding of *Schreck* and is insufficient as a matter of law to state a claim under the free speech clause.

### 4. Hebrew National's Commerce Clause Claim

■ Finally, Hebrew National alleges that Rubin's actions have imposed an unreasonable burden on Hebrew National's constitutional right to engage in interstate commerce. Plaintiff asserts in paragraph twenty-one of its amended complaint:

> In connection with [the current] investigation, Rubin, and/or persons acting in concert with him, have asserted that the Department of Agriculture is seeking evidence that Hebrew National has violated the kosher laws at its plant in Indianapolis, and have threatened to stop plaintiff from bringing its products into New York state.

Hebrew National contends that this was part of a conspiracy to punish it for having moved its plant to Indiana.

In cases like this one involving the traditional exercise of the state's police power, to allege a violation of the commerce clause a plaintiff must allege that the challenged statute or conduct imposes a substantial burden on interstate commerce. As the Supreme Court has clearly stated: "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Hebrew National has not alleged any facts suggesting the existence of an excessive burden on interstate commerce in violation of the commerce clause. The issuance of a subpoena *duces tecum* by the Department clearly does not substantially burden interstate commerce. Similarly, a threat by an unnamed individual to stop Hebrew National from bringing its products into New York State does not state a commerce clause violation by defendant Rubin. No facts have been alleged that state a ripe commerce clause claim either under section 1983 or article 1, section 8, clause 3 of the Constitution.

Because Hebrew National has not stated a commerce clause claim, I do not reach the issue of whether the commerce clause may be used to challenge the constitutionality of conduct by state officials under color of state law or whether the commerce clause secures rights which are cognizable under section 1983.

### CONCLUSION

For the foregoing reasons, Hebrew National has failed to state a claim upon which relief can be granted under either 42 U.S.C. § 1983 or the Constitution. Therefore, Rubin's motion to dismiss the amended complaint is granted. I do not reach defendant's abstention, indispensable parties and qualified immunity arguments.

SO ORDERED.