COMMACK SELF–SERVICE KOSHER MEATS, d/b/a Commack Kosher, Brian Yarmeisch and Jeffrey Yarmeisch, Plaintiffs,

v.

Rabbi Schulem RUBIN as Director of the Kosher Law Enforcement Division of the New York State Department of Agriculture and Markets, Defendant,

and

Hon. Sheldon Sivler, Abe Alper, Jon Greenfield, Jack Lee, Rabbi Moshe Portnoy, Richard Schwartz, Agudath Harabonim of the United States and Canada, Agudath Israel of America, National Council of Young Israel, Rabbinical Alliance of America, Rabbinical Council of America, Torah Umesorah—National Society of Hebrew Day Schools, and the Union of Orthodox Jewish Congregations of America, Defendants–Intervenors.

No. 96 CV 0179 (NG).

United States District Court,
E.D. New York.

Dec. 15, 1997.

Robert Jay Dinerstein, Dinerstein & Lesser, P.C., Commack, NY, for Commack Self–Service Kosher Meats.

Marion R. Buchbinder, Attorney General's Office, New York City, for Schulem Rubin.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, DC, Mark A. Belnick, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Dennis Rapps, New York City, for Sheldon Silver, Abe Alper, Jon Greenfield, Jack Lee, Rabbi Moshe Portnoy, Richard Schwartz, Agudath Harabonim of the U.S. and Canada, Agudath Israel of America, National Council of Young Israel, Rabbinical Alliance of America, Torah Ume-

sorah–National Society of Hebrew Day Schools and Union of Orthodox Jewish Congregations of America.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiffs, Long Island merchants servicing consumers of kosher products, challenge the constitutionality of the New York Agriculture and Markets Law § 201–a, *et seq.* ("the Kosher Laws"). In December 1996, several Jewish organizations, a rabbi, a competitor of plaintiffs, and individual consumers of kosher products were jointly permitted to intervene as defendants pursuant to Federal Rule of Civil Procedure 24(b)(2).[1] Defendant, the Director of the Kosher Law Enforcement Division of the New York State Department of Agriculture and Markets, now moves this court to abstain, pursuant to *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), from adjudicating plaintiffs' challenge to the Kosher Laws. Plaintiffs and defendants-intervenors oppose the motion.

This action arises from multiple citations of plaintiffs by the Kosher Law Enforcement Division for violations of the Kosher Laws. Plaintiffs raise a facial challenge to the constitutionality of the Kosher Laws,[2] which all parties agree were enacted to protect consumers of kosher products from fraud. *See, e.g., Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 501, 45 S.Ct. 141, 142, 69 L.Ed. 402 (1925) (" 'The purpose of the statute, manifestly, is to prevent and punish fraud ....' ") (quoting *People v. Atlas,* 183 A.D. 595, 596–97, 170 N.Y.S. 834 (1st Dept.1918), *aff'd without opinion,* 230 N.Y. 629, 130 N.E. 921 (1921)). Section 201–a(1) of the Kosher Laws provides that any individual who,

> with intent to defraud, sells ... any ... article of food ... and falsely represents the same to be kosher or kosher for Passover, whether such ... article of food ... be raw or prepared for human consumption, or as having been prepared under,

and of a product or products sanctioned by, the orthodox Hebrew religious requirements, either by direct statement orally, or in writing, which might reasonably be calculated to deceive or lead a reasonable man to believe that a representation is being made that such food is kosher or prepared in accordance with the orthodox Hebrew religious requirements ... is guilty of a class A misdemeanor ....

N.Y. Agric. & Mkts. § 201–a(1). Section 201–c(1) further provides that no person shall "[w]ilfully mark ... as kosher, or as kosher-style, or as having been prepared in accordance with the Hebrew orthodox religious requirements food or food products not kosher or not so prepared ...." N.Y. Agric. & Mkts. § 201–c(1). And Section 201–f, which bears the caption "Kosher meat or poultry," provides that

> [a]ll meat or poultry which is sold ... and is represented as having been prepared in accordance with orthodox Hebrew religious requirements and which has not been soaked and salted immediately after slaughter on the premises where slaughtered:
>
> (a) shall have affixed to it a tag or plumba stating the date and time of day ... of slaughter; and
>
> (b) shall be washed in accordance with orthodox Hebrew religious requirements within seventy-two hours after slaughter, and within each subsequent seventy-two hour period, by a duly ordained orthodox rabbi or by a person authorized by him....

N.Y. Agric. & Mkts. § 201–c(1).

Plaintiffs argue that these provisions define food that is "kosher" as food that is "prepared in accordance with orthodox Hebrew religious requirements," and in so doing they impermissibly establish Orthodox Judaism as the only legitimate form of Judaism in matters of the kosher dietary laws. Plaintiffs also argue that equating "kosher" with "orthodox Hebrew religious require-

---

1. Although in defendant's supplemental reply brief he argued that the order permitting intervention should be vacated, he withdrew that request in a letter dated August 29, 1997.

2. At oral argument, plaintiffs stated that they raise only a facial challenge to the constitutionality of the Kosher Laws.

ments" deprives Jewish consumers who do not follow Orthodox Judaism of their First Amendment right to the free exercise of religion and of their Fourteenth Amendment right to the equal protection of the laws. Finally, plaintiffs argue that the Kosher Laws are unconstitutionally vague because they fail to define "orthodox Hebrew religious requirements." [3]

Defendant, represented by the Attorney General of the State of New York, urges the court to abstain from adjudicating plaintiff's constitutional challenges to the statute. Plaintiffs and defendants-intervenors argue that *Pullman* abstention is inappropriate because there is no unsettled state law issue; rather, the Kosher Laws have long been interpreted by the state courts as equating "kosher" with "prepared in accordance with orthodox Hebrew standards." Although they agree that abstention is inappropriate, plaintiffs and defendants-intervenors disagree over whether that definition of "kosher" renders the statute unconstitutional. For the reasons set forth above, plaintiffs argue that the statute is unconstitutional; defendants-intervenors argue that, because a "consensus" exists among kosher consumers that "kosher" goods are "prepared in accordance with orthodox Hebrew religious requirements," the statute's treatment of the terms as synonymous is unobjectionable.

This opinion addresses only the question whether abstention is appropriate; it does not address, and the parties have not yet fully briefed, the merits of plaintiffs' constitutional challenges to the statute.

 "Federal district courts have an unflagging duty to adjudicate matters properly within their jurisdiction, and are not to decline jurisdiction simply because the issues presented may be decided in another forum." *Greater New York Metropolitan Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir.1993); *McRedmond v. Wilson*, 533 F.2d 757, 760–64 (2d Cir.1976). A district court may renounce its obligation to adjudicate controversies properly within federal jurisdiction only in exceptional circumstances. *Id.* The *Pullman*

abstention doctrine carves out one such exception. It permits abstention to allow review by the state courts "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984).

 Three conditions must be met before a federal court may invoke *Pullman* abstention: "(1) [T]he state law must be unclear, (2) resolution of the federal issue must depend on the interpretation of state law, and (3) the state law must be susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Greater New York Metropolitan Food Council*, 6 F.3d at 77. The Court of Appeals for the Second Circuit has described the philosophy underlying the *Pullman* abstention doctrine as follows:

> One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not. A federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former. Such a decision not only is a waste of judicial resources but provokes a needless collision between state and federal power.

*Goldberg v. Carey*, 601 F.2d 653, 658–59 (2d Cir.1979) (internal quotations omitted). When the state courts have construed the statute at issue, however, a federal court risks no "needless collision between state and federal power," *id.*, and *Pullman* abstention is inappropriate. *See, e.g., United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 595 (2d Cir.1989) ("[A] federal court should abstain only when the chance of error [in interpreting an issue of state law] is reason-

---

**3.** Defendant suggests that I have dismissed plaintiffs' claim that the Kosher Laws are unconstitutionally vague. That is not the case. The

vagueness challenge was discussed briefly at oral argument, but it was not dismissed.

ably certain, and then only when abstention reduces the likelihood of error.").

The statutory provisions at issue in this case have been interpreted for decades as equating "kosher" with "prepared in accordance with orthodox Hebrew religious requirements." As early as 1918, in *People v. Atlas,* 183 A.D. 595, 170 N.Y.S. 834 (1st Dept.1918), *aff'd without opinion,* 230 N.Y. 629, 130 N.E. 921 (1921), the New York Appellate Division, interpreting provisions of a predecessor statute that are substantially similar to those now challenged by plaintiffs, concluded that the Kosher Laws define "kosher" as "prepared in accordance with orthodox Hebrew religious requirements":

> It needs no argument to show that it is competent for the Legislature within its general police power to enact legislation to prevent and punish fraud and imposition. If, therefore, the Legislature, by use of the word "kosher" in this statute, meant something more than meat prepared under and of a product sanctioned by the orthodox Hebrew requirements, and the provisions of the statute for that reason would be too indefinite, still the information warranted the conviction of the defendant under the succeeding definite provisions of the statute, provided the evidence be sufficient. It is manifest, however, that the Legislature did not intend to use the word "kosher" in an indefinite sense, but evidently in the ordinary sense in which it is used in the trade, which is to designate meat as having been prepared under and of a product sanctioned by said religious requirements, and, therefore, ... the Legislature has itself definitely defined the word "kosher" as used in the statute. This construction leaves the statute sufficiently definite, and confines it to those who with intent to defraud sell or expose for sale meat or meat preparation and falsely represent the same as having been prepared under and of a product or products sanctioned by the orthodox Hebrew requirements.

*Id.* at 597, 170 N.Y.S. 834. Later cases, interpreting successor statutes containing the same basic provisions as those interpreted in *Atlas,* have likewise treated the Kosher Laws as defining "kosher" to be "prepared in accordance with orthodox Hebrew religious requirements." *See, e.g., People v. Gordon,* 258 A.D. 421, 16 N.Y.S.2d 833, (2d Dep't), *aff'd without opinion,* 283 N.Y. 705, 28 N.E.2d 717 (1940); *State v. Glassman,* 109 Misc.2d 1088, 441 N.Y.S.2d 346 (County Ct.1981) ("The issue in this case is whether the defendants 'with intent to defraud' represented that their frankfurters and salami were Kosher when in fact [they were not because they were] not prepared in accordance with the Orthodox Hebrew religious requirements."); *People v. Johnson Kosher Meat Products, Inc.,* 42 Misc.2d 534, 248 N.Y.S.2d 429, 429 (Civ.Ct.1964) ("Upon failure at the trial to adduce any evidence that the meat sold as kosher was not prepared wholly in accordance with Hebrew orthodox religious requirements, the charges of fraudulent misrepresentation under Section 201–a were dismissed."). This settled interpretation of the New York Kosher Laws has also been recognized by the courts of other states. *See, e.g., Erlich v. Municipal Court of the Beverly Hills Judicial District,* 55 Cal.2d 553, 557–58, 11 Cal.Rptr. 758, 360 P.2d 334 (Cal.1961) (addressing California statute with "substantially the language of the New York [Kosher Laws]," and giving that statute "the same construction as that given to the New York statutes by the courts of New York," namely, that "kosher" means " 'having been prepared under ... the orthodox Hebrew religious requirements' "). And, in an amicus brief submitted to the Supreme Court of New Jersey in *Ran–Dav's County Kosher, Inc. v. New Jersey,* 129 N.J. 141, 608 A.2d 1353 (1992), *cert. denied,* 507 U.S. 952, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993), a recent case holding the New Jersey Kosher regulations unconstitutional on grounds similar to those pressed here, the former Attorney General of the State of New York stated that the New York Kosher Laws "define kosher in terms of orthodox Jewish requirements." Brief of *Amicus Curiae* Robert Abrams, Attorney General of the State of New York at 16, Exh. F. to Memorandum of Defendant–Intervenors.

Defendant now disavows this interpretation of the Kosher Laws and urges that the statute "does not impose a definition of the ter[m] 'kosher' " and thus avoids plaintiffs'

constitutional challenges. Ignoring the body of law interpreting the statutory provisions of which plaintiffs complain, defendant argues that, rather than defining "kosher," those provisions merely require that merchants representing their products as either "kosher" or "in accordance with orthodox Hebrew religious requirements" provide sufficient information to allow a consumer to determine for himself or herself whether the entity or individual supervising the preparation of the products in question applies standards that are consistent with the consumer's individual religious beliefs.

Defendant cites no cases supporting his interpretation. Instead, he relies heavily on the following provisions of the Kosher Laws which are not challenged by plaintiffs: Section 201–e(3) of the Kosher Laws provides that any "food commodity in package form" which is identified as Kosher or Kosher for Passover "shall not be offered for sale ... until thirty days after [the] producer or distributor [of the food commodity] shall have registered the name, current address and telephone number of the supervising rabbi or certifying organization who certifies the product as kosher with the department." N.Y. AGRIC. & MKTS. §§ 201–e(3–a), 201–e(3–b). Section 201–b(2) requires any food establishment or caterer selling "food prepared on the premises which is represented as kosher," to file with the State the name of the Rabbi or organization supervising the preparation of the food. And Section 201–i(1) provides that "[a]ny person under whose supervision any non-prepackaged meat ... has been prepared ... or certified as kosher, and any person under whose supervision any article of food ... has been certified as kosher ... may file with the department a statement of such person's qualifications ...." N.Y. AGRIC. & MKTS. § 201–i(1).

Based on these provisions, defendant argues that the Kosher Laws are essentially registration statutes, requiring only the provision of background information to consumers and imposing no definition of what is and is not "kosher." He further argues that this interpretation is likely to be adopted by the state courts and would avoid the constitutional questions raised by plaintiffs.

The fundamental flaw in defendant's argument is that the statutory provisions on which he relies are additional to,[4] and do not replace, the provisions here challenged, which have been interpreted by the state courts as equating "kosher" with "prepared in accordance with orthodox Hebrew religious requirements." *See* N.Y. AGRIC. & MKTS. §§ 201–a, 201–b, 201–c. Simply put, it is not reasonable to conclude that there is any likelihood that the state courts will treat these additional legislative requirements as fundamentally transforming the Kosher Laws into mere registration statutes. This is so, even if it is presumed that the state courts would if possible construe the Kosher Laws to avoid the constitutional question presented. *See Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324–25, 12 L.Ed.2d 377 (1964).

In effect, defendant asks this court to ignore the established interpretation of the statute by the state courts for the very reason that it raises constitutional questions. Defendant's position is that, rather than addressing those questions, this court should allow the state courts to reconsider their established interpretation. "But the relevant inquiry is not whether there is a bare, though unlikely, possibility that the state courts might render adjudication of the · federal question unnecessary. Rather, '[the Supreme Court has] frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction.'" *Hawaii Housing Authority,* 467 U.S. at 237, 104 S.Ct. at 2327 (quoting *Zwickler v. Koota,* 389 U.S. 241, 251, and n. 14, 88 S.Ct. 391, 397 and n. 14, 19 L.Ed.2d 444 (1967)). Here, faced with a statute that has been unambiguously interpreted by the state courts as equating "kosher" with "prepared in accordance with orthodox Hebrew religious requirements," *Pullman* abstention is unnecessary. Because there exists a well

---

4. Sections 201–e(3–a), 201–e(3–b), 201–b(2), and 201–i(1) of the Kosher Laws were added in 1975, 1981, 1984, and 1990, respectively.

established interpretation of the Kosher Laws by the New York state courts, and because the constitutional challenges raised by plaintiffs are not "entangled in a skein of state law that must be untangled before the federal case can proceed," *McNeese v. Bd. of Educ. For Community Unit School Dist. 187*, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963), there is no basis for abdicating federal jurisdiction. Defendant's motion is denied.

The parties are directed to confer regarding a schedule for resolution of the constitutional issues and to report to the court in writing by January 15, 1997.

**SO ORDERED.**